### CASTAIN v. O. M. GWIN CONST. CO.
### No. 1161.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1933.

E. M. Boagni, of Opelousas, and Frank T. Doyle, of New Orleans, for appellant.

L. L. Perrault, of Opelousas, for appellee.

MOUTON, Judge.

Plaintiff claims that during the course of his employment with defendant company, and while setting a rafter end at the eaves of the roof of a building defendant company was erecting, some foreign particle of débris from the roof fell into his left eye, which caused the total loss of the use of that eye. This accident is alleged by plaintiff to have occurred on the 16th day of January, 1932.

Judgment was rendered by the district judge for the amount of compensation asked by plaintiff for the loss of his eye, from which defendant company appeals.

The sole question presented on this appeal is as to whether or not the loss of plaintiff's left eye was caused by the accident alleged by him to have occurred on the 16th day of January, 1932.

The record shows that the accident, which plaintiff alleges caused the injury, happened about the noon hour of January 16, 1932. At that time it appears that plaintiff was engaged in setting a rafter end at the eave of the building which was in process of construction by defendant company. On the roof were particles of slate, stuff broken from the chimney, and limestone for the capping of the chimneys.

Plaintiff claims that while he was in a stooping position, looking upward, plumbing the rafter, some piece or particle of slate, limestone, or metal fell from the roof into his left eye causing the injury which resulted in the loss of that eye. He testified that the edge of the roof from which these particles fell was at a distance of about 18 inches from his face; and, answering a question propounded by counsel for defendant as to whether he felt something striking his eye with great force, he said: "It was a bunch of stuff that fell from above."

There is no testimony in the record contradicting the statement so made by plaintiff, above referred to, and there are no facts or circumstances reflected in the record indicating that the accident did not happen as testified to by plaintiff.

Mr. Schnexnyder was working in conjunction with plaintiff in setting these rafters at the time plaintiff claims the accident took place. The testimony of plaintiff is, that when this foreign substance fell in his eye, he handed the level to Mr. Schnexnyder to finish the plumbing of the rafter end, and

says he told him he "couldn't see any more to plumb same correctly."

Mr. Schnexnyder said he did not remember if plaintiff told him of the injury at the time he claims to have been injured. He says, however, that plaintiff complained of the accident after he got down from where they had been working.

It is shown that plaintiff reported about it soon after to Mr. Garry, superintendent of the defendant company, who gave him an order to see Dr. Shute, physician of the company, by whom he was directed to see Dr. Pettitjean, an eye specialist of Opelousas, La.

It was shown that on the Saturday before January 16th, the Saturday plaintiff claims the accident occurred, that plaintiff while on a hunt with Mr. Schexnyder, above mentioned, suffered an injury to his left eye which defendant contends was the real cause of the injury from which he lost the use of that eye.

Plaintiff, as was shown by the testimony of Mr. Schexnyder, while the hunt was going on was walking behind him; said that his left eye had been lashed over by a limb or branch of a tree, a small one, we presume, considering the character of the country in which they were hunting. Plaintiff testified he had made that statement to Mr. Schexnyder and that his eye had been struck by a brush or branch that had whipped his face. Mr. Schexnyder says he looked at plaintiff's eye and saw it was watering and was a little inflamed. They were then at about two or three miles from their auto and started back in the direction of the auto, hunting in the meantime. On the way plaintiff shot and killed a couple of quails. Mr. Schexnyder says that while going towards the car plaintiff complained several times about the injury to his eye.

Mrs. Castain, plaintiff's wife, testified that she noticed his eye was a little red and she had "put some agarol in it"; that he used his eye in reading and did not complain it was hurting any.

Desparia Castain, plaintiff's brother, went to his home a day or two after the hunting trip, saw him reading and playing checkers, and noticed a little pink in the white of his eye.

On the Monday following the Saturday on which plaintiff suffered the lash over his eye on his hunting trip, he called on Mr. Garry, superintendent of defendant company, and told him that on account of his eye he thought he would take off a day or two from his work, which was agreed to by Mr. Garry. On the Wednesday following, plaintiff reported for work; Mr. Garry finding that his eye was in good condition, plaintiff resumed his work.

His coemployees on the job, including Mr. Schexnyder who was engaged with him in the same kind of work, found nothing the matter with his eye while working from Wednesday morning up to Saturday between 11:30 and 12 o'clock, when, after getting down from the scaffold, he stated to Mr. Schexnyder and to Mr. Garry that he had suffered the accident in question and was then directed to Dr. Shute, physician for the company, who found a serious injury to the eye and directed him to Dr. Pettitjean, oculist, as hereinabove stated, and who examined his eye the afternoon of January 16th, at about 3 or 4, a few hours only after the time of the alleged accident.

Dr. Pettitjean found he was suffering from photophobia, etc., and says, that "on close examination I found a perforation of the cornea about two and half millimeters from the limbis. This perforation extended in lens."

We will not indulge in the use of the technical medical terms used by Dr. Pettitjean and will direct our attention to the question about the perforation of the cornea and lens capsules wherein lies the crux of the issue presented for solution.

Dr. Pettitjean testified that the outer part of the cornea is very soft and the posterior part very tough. He said, however, that the injury to plaintiff's eye could have been caused by a pointed piece of metal or a pointed piece of slate. He says also, that his examination of plaintiff's eye indicated that the injury was recent, by which he means, as explained in his testimony, that it had occurred within a few hours. He also said that the puncture in the lens of the eye could have been caused by the falling into the eye of a sharp slate or other sharp material from the roof of the building where plaintiff was working. The doctor was also of the opinion that plaintiff could not have rendered the services required of him when he returned to his work on the building on Wednesday if he had suffered a puncture of the lens of his eye on his hunting trip on the preceding Saturday. His opinion is, that if the injury had been inflicted on Saturday it would have increased, the inflammation would have gotten worse, and his conclusion is, that the accident of the 16th was the proximate cause of the loss of plaintiff's eye.

Dr. Buffington, a prominent oculist of New Orleans, professor of eye diseases at Tulane University, gave his testimony in the case by deposition. In answer to a cross-interrogatory propounded to him by counsel for defendant company, he said:

"I would be inclined to think that a piece of slate falling into the person's eye on January 16th would have caused a more serious injury than if he had been whipped in the eye by some brush or other foreign matter on the days mentioned previously."

In answer to another cross-interrogatory from counsel for defendant, Dr. Buffington admitted that the cornea is quite resistant to outside forces, which, he says, "is evidenced

by the fact that it is constantly exposed to wind and dust and other external forces without injury."

Such resistance, however, it occurs to us, is quite different from what would be required to withstand without injury the falling débris of slate, limestone, and mortar from the roof of a building which plaintiff claims caused the perforation of the cornea or lens of his eye, and the resulting traumatic cataract.

Dr. Long, an oculist of Lafayette, La., said he had questioned plaintiff in reference to the history of the case and found, after examination, that the first step had been taken to a cataract extraction. When questioned by direct interrogatory as to the cause of the injury to plaintiff's eye, he answered, as follows:

"I believe the injury on January 16, 1932, was the cause of the loss of the left eye because if Mr. Castain had received the injury on January 10, 1932, he would have been unable to work accurately due to the fact that a certain reaction of acute inflammation to the left eye or the sudden loss of binocular vision would have hindered him from working accurately."

It is shown that plaintiff was one of the best carpenters who were working on the building which was being constructed by defendant; had to work on arches and circles which required considerable accuracy in the handling of tools. The plumbing also demanded good eyesight and precision, we should think, considering the character of such work, hence we have no hesitancy in concluding that Dr. Long was quite right in saying, if he had received the injury on January 10, the "sudden loss of binocular vision would have hindered him. from working accurately."

The proof is, however, that from Wednesday to Saturday at noon plaintiff performed his work with his usual accuracy and to the satisfaction of Mr. Garry, superintendent of defendant company.

On the other hand, we have the testimony of Doctor Bahn and Doctor Beridon, medical expert witnesses for defendant.

Dr. Bahn, says, as to the cause of the injury, that it could not have been caused by a small piece of slate or dust striking plaintiff's eye from a distance of one or two feet, but, to use his own language, "was caused by a sharp instrument striking his eye with considerable force as would have occurred by being struck by a thorn such as Mr. Castain states having been struck with by on January 10, 1932."

The fact is, however, that Mr. Castain never testified that he had been struck by a thorn on January 10, 1932, or at any other time.

The position of counsel for defendant is, that he must have been struck by such a thorn, but there is no proof whatsoever from Mr. Castain, or any witness who testified in this case, that plaintiff had been struck in the eye by a thorn.

Mr. Schexnyder, who counsel for defendant admits was a fair witness, and who was near plaintiff on the hunting trip January 10th, when he told him of the accident, immediately looked at his eye, and did not testify that plaintiff had been struck by a thorn or by anything of that nature.

Dr. Bahn, from all accounts a distinguished oculist from the city of New Orleans, had this also to say about the cornea:

"The cornea is very resistant to injury more so than would be the leather of one's shoes. In other words, the force which struck his eye must have been greater than that which would have pierced the average shoe and injured the foot underneath."

Asked as to whether the external part was as tough as ordinary shoe leather, Dr. Pettitjean said:

"No, the outer part is very soft and the posterior part is very tough."

Dr. Beridon, witness for defendant, would not subscribe to the opinion that the cornea was as difficult to puncture as is the "leather of one's shoe."

The power of resistance ascribed to the cornea by Dr. Bahn appears to us as an exaggeration, and, judging from what the two other medical experts had to say on that subject, we will accept their opinion as being more conformable to reason and common experience.

Dr. Beridon testified that it would have been physically impossible for plaintiff to have suffered that injury, while looking upward, from a foreign particle, free and unattached, such as a small piece of slate, falling from no greater distance than 24 inches above plaintiff's face.

Counsel for defendant company contend that a piece of slate or other particle falling from such an elevation above plaintiff's face could not by the sheer force of gravity have penetrated the cornea and lens capsule of the eye.

It will be noted that the question propounded to Dr. Beridon was directed to a free and unattached particle falling from the distance above mentioned.

There is nothing in the evidence to sustain the theory that the foreign particle which plaintiff says caused the injury fell from the roof of the building, free and unattached.

Plaintiff was asked by counsel for defendant if he had felt anything strike his eye with great force. He answered that question by saying: "It was a bunch of stuff that fell from above."

Obviously, this "bunch of stuff" had reference to the broken slate, limestone, and mor-

tar which fell from the roof of the building in plaintiff's face. The broken slate which the majority of the medical experts thought had caused the injury was, it is fair to say, neither free nor unattached from the accumulation of the débris which constituted the "bunch of stuff."

It is reasonable to conclude that the particles which constituted this accumulated mass were linked and more or less attached to each other, considering the materials of which the débris was composed. Falling in a "bunch," the "sheer force of gravity" must have been much greater than would have been the case if the particles, including broken slates, had fallen free and unattached to each other. No one, medical expert or other, can say that a piece of slate so falling into the eye could not puncture the cornea and lens capsules. It seems to us that such a puncture could have been the result, unless we could accept the resisting qualities ascribed to the cornea by Dr. Bahn.

The lower court accepted the opinion of Dr. Pettitjean who made the original examination of plaintiff's eye soon after the accident, in the afternoon of January 16th, and in which Doctors Buffington and Long concurred.

In cases of this character the courts have to be guided to a large extent by the opinion of medical experts. In this case the district judge followed the opinion of the majority of the experts and which, we think, is supported by the facts to which we have referred.

After reading with care the evidence in this case and able briefs of counsel for defendant company, we have been unable to find any error in the judgment appealed from; certainly not manifest error to warrant a reversal.

Judgment affirmed.