## SPARKS v. LONG BELL LUMBER CO.
### No. 1717.

Court of Appeal of Louisiana.
First Circuit.
June 9, 1937.

Gist & Thornton, of Alexandria, for appellant.

Elmer L. Stewart, of DeRidder, for appellee.

LE BLANC, Judge.

Plaintiff instituted this suit to recover compensation under the Employers' Liability Law of this state, from the Long Bell Lumber Company and the Alexander & Bolton Insurance Agency, Inc., for total, permanent disability arising out of an injury alleged to have been sustained by him while performing the duties for which he was employed by the said Long Bell Lumber Company. He sued the Alexander & Bolton Insurance Agency, Inc., as the insurance carrier of his employer.

He alleges that he was employed as an edgerman in the saw mill of the Long Bell Lumber Company at DeRidder, La., and that on the 15th day of October, 1935, while discharging the duties of his employment, at about 3:30 o'clock in the afternoon, particles of sawdust flew and lodged in his left eye. He complained of the injury to the company's doctor who gave him certain medicine to be used as drops in his eye, and avers that although he used the medicine as directed and continued to be treated, he nevertheless eventually lost the sight out of that eye. He alleges further that his right eye is partially affected and that as a result of this great impairment of vision he is unable to perform any work of a reasonable character by which he might earn his livelihood and therefore his case is one of total permanent disability for which he is entitled to recover 65 per cent. of the amount of the wages he earned, that is $10.92, for the full period of 400 weeks. He also alleges that he subsequently sustained another injury to his head immediately over his left eye, but there seems to be no intention on his part to connect that injury with the disability he claims.

The defendant Long Bell Lumber Company denies that plaintiff had sustained such an injury as he complains of and which caused him the loss of his eye. It avers, to the contrary, that the condition of his eye is due entirely to natural and other causes

for which it can in no manner be held responsible for compensation or otherwise.

The defendant Alexander & Bolton Insurance Agency, Inc., deny any liability whatsoever on the ground that it is in no manner engaged in the general and liability insurance business in Louisiana or elsewhere and that its business is confined solely to soliciting insurance as agent or broker for various insurance companies throughout the country and that its only connection with the insured is to collect a premium on the business which it secures for its principal.

Upon trial of the case on the issues as thus made, the lower court rendered judgment in favor of the plaintiff and against both defendants, in solido, as for the loss of the left eye and in accordance with the provisions of the compensation statute, awarded him compensation for the period of 100 weeks at the rate as prayed for by him. Both defendants have appealed.

It may be proper to state here that the judgment against the Alexander & Bolton Insurance Agency, Inc., appears to have been rendered through error or misconception as there was no proof offered in support of the demand as made against that defendant. Plaintiff now concedes that he has no recourse against that insurance agency on the claim he presents and that the judgment in so far as it condemns that defendant is erroneous.

Plaintiff answered the appeal taken by the Long Bell Lumber Company, asking that the judgment be amended so as to award him compensation as for total, permanent disability instead of for the loss of an eye only.

The only issues which now confront the court are whether the loss of use of the plaintiff's left eye resulted from accidental means while he was engaged in performing services for his employer, as he alleges, and if it did, whether his compensation should be limited to the loss of one eye as held by the district judge, or is he entitled, on the other hand, to compensation as for total and permanent disability because of a partial affection of his right eye.

█ It is admitted by the defendant that plaintiff is totally blind in the left eye and consequently has no use of that member whatever. It is well established by the evidence, however, that his right eye is in nowise affected and that his vision, so far as that eye is concerned, is perfectly normal. This latter fact is established by the testimony of Dr. D. C. Iles, eye specialist, who examined the plaintiff's eyes and made the necessary tests, and that testimony is not contradicted. We find no difficulty in agreeing with the learned trial judge, assuming that plaintiff is entitled to judgment, in his holding that the award has to be restricted to the loss of the use of an eye, for which he was properly allowed 100 weeks' compensation.

Plaintiff's counsel in pressing his demand for compensation as for total, permanent disability relies strongly upon the decision of the Supreme Court in the case of Knispel v. Gulf States Utilities Co., Inc., 174 La. 401, 141 So. 9. But the result of the accident to the employee in that case was not at all of the same nature as the one with which we are here concerned. In the Knispel Case, plaintiff sustained an injury which produced a condition known as diplopia or double vision. As a matter of fact, he did not suffer the loss of the use of any one particular eye, but they were both so affected that when looking at an object, he saw double. In other words, he saw two objects instead of the only one he was looking at. Under the peculiar facts of the case, his disability was classed as one of a total and permanent nature and he was awarded compensation for the full period of 400 weeks. Here, however, we are dealing with an accident in which the employee has lost the use of an eye for which our statute makes a specific allowance of compensation for a period of 100 weeks. See Act No. 20 of 1914, § 8, subsec. 1, par. (d), as amended by Act No. 242 of 1928.

The other issue in the case presents a question of fact on which we find ourselves again in agreement with the finding of the district judge. The question is, Has the plaintiff shown that the loss of his left eye resulted from an accident which occurred while he was engaged in the course and scope of his employment?

The testimony is positive and not disputed that plaintiff is totally blind as far as vision in the left eye is concerned and that the blindness is caused by scar tissue from an ulcer of the cornea. If the ulcer which brought about this condition came as a result of sawdust which flew in his eye, as he claims, on October 15, 1935, there can be no doubt that he is entitled to compensation as it is shown that sawdust did blow in his eye on that day while he was running the edger in defendant's sawmill. On the other hand, if, as defendant contends, the ulcer came about as a result of some natural cause, such

as a disease of some kind, and had no causal connection whatever with the sawdust accident, then he should not recover.

There is not any testimony in the record which may be said to contradict the plaintiff's, that on the afternoon mentioned, sawdust did blow in his eye and that before he left the mill he went to the company's physician and complained about the injury he had suffered. The physician, Dr. T. R. Sartor, corroborates his testimony to the extent that plaintiff did call at his office that afternoon and complained to him and while he is not positive about it, he thinks that he did remove sawdust from his eye. He is positive, however, that he treated the eye and prescribed argyrol to be used in drops in order to relieve the condition. Morgan Williams, a fellow employee of the plaintiff, saw the latter leave his work before closing time that afternoon and go to bathe his face at the drinking fountain in the mill. After missing him, he thought something had happened to him, so in going home later, he stopped at plaintiff's house and learned of the injury to his eye. He was asked by plaintiff to put some drops of argyrol in it for him, which he did. Marion Lincoln, another fellow worker, testifies that he saw plaintiff every day and that about the time he claims to have sustained this eye injury, he came to his home one day with the medicine the doctor had given him and asked him to put the drops in his eye. Vallee Clark, who also worked in the mill, on the carrier, noticed that plaintiff had left the mill before work closed that day, and thinking something was wrong with him called at his home that night and states that his left eye was red.

Plaintiff returned to work the next day after the injury he complained of, but kept away from work for a few days after that, and had to be replaced on the job.

From all this testimony, we think it can safely be said that plaintiff has satisfactorily shown that he did sustain an injury to his left eye by having sawdust fly into it, on October 15, 1935, while he was working at his job, as edgerman in the defendant's mill. The important question, which next arises is, Did that injury produce the ulcer which ultimately caused him to lose the sight in that eye?

Dr. D. C. Iles, the specialist already referred to, and who was called as an expert witness by the defendant, stated that if in the interval of time between the date plaintiff was injured by the sawdust flying in his eye, and when he saw him in April, 1936, plaintiff's eye had gotten completely well, it would be his opinion that there was no connection between the injury and the corneal ulcer. On the other hand, however, he says that if during that period of time there had been a continuous inflammation of the eye, then the ulcer may very likely have been the result of the injury. It may be important to mention here that the doctor also stated that a man might have an inflamed eye when there would be no apparent inflammation. Counsel for defendant lays stress on the point made out of the doctor's testimony that Dr. Sartor, who examined plaintiff when he suffered the accident to his head in November, following the eye injury, would, as a doctor, have noticed the inflammation if there was any. Dr. Sartor says he observed none. But as we consider Dr. Sartor's testimony in connection with his examination of the plaintiff on this occasion, we think that he was more concerned with the head injury and as he himself admits, made no close examination of the eye. In February, 1936, he saw plaintiff again when he complained about his left eye and at that time he found the eye badly infected and administered treatment which did not improve the condition and he finally sent him to Dr. Iles. Dr. Sartor agrees with Dr. Iles that if the trouble with that eye was continuous from October, 1935, to February, 1936, when he saw the infection which he says at that time was bad, the ulcer which later caused the loss of the eye might be attributed to the sawdust accident.

Plaintiff testifies that from the time he first sustained the injury complained of, his eye continually bothered him and that he never stopped using the medicine prescribed by Dr. Sartor. He says that he frequently returned to the doctor for treatment and to have the prescription refilled. Dr. Sartor seems positive in his testimony that plaintiff did not return for treatment of the eye until about February 1, 1936, but does not deny that he may have refilled his prescription. We are of the opinion that plaintiff's testimony makes a sufficient showing of a continuous trouble with his left eye to meet the requirement laid down by the two doctors that if it was continuous then the loss of it may very well be ascribed to the accident. At least we think that it is sufficient to overcome the only testimony to the contrary which is Dr. Sartor's opinion, formed without having kept a record of the case and based on rather indistinct recollection, that the ulcer did not result from trauma.

Some of the causes other than trauma which could have produced the ulcerated condition in the eye according to Dr. Iles are such diseases as diabetes and other kidney trouble, syphilis, and focal infections which bring on rheumatism. But from what he refers to as a thorough examination of the plaintiff, this same doctor found him to be free from any of such diseases and in fact stated that he appeared to be a man in extraordinary good health. On examining his teeth in court during the trial of the case, the doctor found that he had pyorrhea or receding gums and states that might have brought on an infection of the cornea if he had it at the time. But there is nothing to show that he was suffering with that disease when his eye first became infected. If, therefore, we exclude every other hypothesis, it looks reasonable and logical to conclude, in line with the opinion of the medical experts, that the corneal ulcer in the plaintiff's eye which caused him to lose his sight in it was caused by the injury sustained by him in the accident of October 15, 1935, and therefore he is entitled to recover compensation.

There is some question about a lack of notice of the accident, but one of the mill foremen testifies that notices were posted in the building to the effect that injured employees were to report accidents either to the foreman on the job or to the doctor and he states that if the accident or injury was reported to the doctor, that was all that was necessary. In view of Dr. Sartor's own testimony to the effect that plaintiff complained to him about his injury on the very day that it occurred, that he examined his eye, removed the sawdust, and prescribed for him, it is hard to understand how it can now be contended that the defendant did not have notice of the accident.

The judgment of the lower court awarding plaintiff compensation against the defendant Long Bell Lumber Company is in our opinion correct, and should be affirmed.

For the reasons stated, it is therefore ordered, adjudged, and decreed that the judgment appealed from in so far as it condemns the defendant Long Bell Lumber Company to pay the plaintiff compensation at the rate as prayed for by him, for the period of 100 weeks, be, and the same is hereby affirmed. In so far as it condemns the other defendant, Alexander & Bolton Insurance Agency, Inc., in the same manner, it is avoided, reversed, and set aside, and it is now ordered that plaintiff's suit as against said defendant be and the same is hereby dismissed. Under the law, a plaintiff, who suffers the reversal of any part of the judgment appealed from, has to stand for costs. In this case, however, plaintiff was permitted to prosecute his action under the Pauper Act (Act No. 156 of 1912, as amended by Act No. 260 of 1918) and is therefore relieved of the obligation to pay costs.

Inasmuch as the judgment against the defendant Long Bell Lumber Company is affirmed, it follows that all costs in connection with the suit as against said defendant will have to be borne by it.