## ROCHELL v. SHREVEPORT GRAIN & ELEVATOR CO., Inc.

### No. 5804.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1939.

Rehearing Denied March 31, 1939.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellant.

Isaac Abramson, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff sues to recover workmen's compensation on the basis of permanent total disability. Three issues are tendered for decision, viz.:

1. Whether plaintiff was injured from an accident while working for defendant.

2. If so, the extent of the disability resulting therefrom.

3. The rate of weekly payments due him.

Plaintiff alleges that on March 5, 1938, while working for defendant, he was injured when a piece of foreign matter, which he "recognized as an oat stem", lodged in his left eye, causing total loss of vision of that organ; that the vision of his right eye, as a result, has become impaired; that because of these injuries and their results, he is wholly disabled to perform manual work of any reasonable character, and because of his illiteracy, he was incapable of earning a livelihood other than by manual labor.

The lower court awarded plaintiff compensation at the rate of $7.80 per week

for 100 weeks to cover the loss of sight of an eye.

Defendant appealed. Plaintiff prays that the weekly payments be increased to $9.75 and that the term therefor be increased to 400 weeks.

Plaintiff worked for defendant for three or four years as a common laborer. He testified that while removing some oats from a box car March 5, 1938, a particle of some kind, believed by him to have been part of an oat, flew into his eye. He thought nothing of it because such had happened before and the particle would be gradually worked from the eye or would be removed by rubbing. He did not mention the matter to any of his fellow workmen nor to any officer of defendant that day. He left defendant's plant at about the usual hour that afternoon. On his way to his brother's home in the city of Shreveport, where he was boarding, he stopped at the home of his estranged wife and she bathed the eye with a wet towel, because he was complaining of pain therein. The pain continued and his brother's wife that evening also ministered to the eye. That was on Saturday. He remained in bed until the following Monday. The eye grew inflamed and on Sunday he could not see out of it. On Monday morning he went back to the mill where he had worked. He testified that he then told Mr. Cawthon, defendant's vice president, that he had trash in his eye and that he was by him advised to go to the Charity Hospital for treatment. He had already been there but admittance was refused him for lack of a physician's recommendation. Mr. Cawthon testified that plaintiff on this visit said to him that "his old trouble had come back on him" (gonorrhea), and that he wanted some money to pay a country negro doctor to treat him. He said he told plaintiff "that he would fool around and lose his eyesight; that he should go to a good doctor." He declined to advance him any money. He denied that plaintiff said anything at that time about trash being in his eye. Thereafter, with the assistance of a physician, plaintiff was admitted to said hospital, and was a patient therein for four weeks and four days. Dr. Scales, an eye specialist, treated the eye for two weeks and then was able to remove the foreign matter by an operation. It was very small, of fibrous structure, and soft. Complete loss of vision of the left eye followed. The right eye is not involved nor impaired to any extent, so far as disclosed by the record.

Dr. Scales treated plaintiff for ulcerated cornea. He said the particle removed from the eye could have been a part of an oat stick or of wood. He was of the opinion that the presence of this particle with resulting infection produced the loss of vision. He was unable to tell how long it had been in the eye. He did not detect any evidence of gonorrheal infection either before or after the removal of the particle, and is certain the condition of the eye was not superinduced in any manner by gonorrhea.

Other medical testimony in the case strengthens plaintiff's denial that he was afflicted with gonorrhea at time injured or thereafter.

Defendant's vice president and several of plaintiff's fellow workmen testified that no oats were unloaded from a box car at defendant's mill on March 5, 1938, and from this abundance of testimony on this point, it is argued that plaintiff's case falls because it is proved he could not have been injured in the manner he alleges and testified to. It is rather remarkable that these several colored workmen could have remembered so distinctly, after the lapse of nearly three months, that no oats were unloaded on March 5th at defendant's plant. The lower court must have accepted plaintiff's testimony on this point, or else reached the conclusion that in some other manner plaintiff was injured while working for defendant. We see no good reason for viewing it differently.

The fact that plaintiff made no outcry when, nor advised any fellow workmen that an object had gotten into his eye, should raise no inference against him. It is common knowledge that it often requires several days, or weeks, for the ill effects of foreign matter in an eye to produce infection, pain or other symptoms. Plaintiff says he thought nothing of the particle getting in his eye on March 5th, as he had often had like or similar experiences, and no ill effects resulted. However, it is certain that within less than an hour after quitting work that day he complained of pain in this eye and had some members of his family try to locate and remove the cause by bathing, etc. From that time until Dr. Scales operated

on the eye, there was no surcease of pain.

 Defendant argues that even if it be conceded that plaintiff lost the sight of the eye as the result of an oat particle flying into it, as he contends, that the incident would not amount to an "accident" within the intendment of the Workmen's Compensation Law, Act No. 20 of 1914, because it did not at the time produce "objective symptoms of an injury"; and in support of this position refers to the definition of an "accident" in the Workmen's Compensation Law.

If the words "objective symptoms of an injury", employed in the statute, were intended to mean or be construed to mean what, on their face, they imply, it is obvious that they have been read out of this definition by a multitude of adjudications by the appellate courts of this state and by the Supreme Court also. Nearly all strain injuries reveal no "objective" symptoms at the time of injury or thereafter.

The following Louisiana decisions sustain plaintiff's position herein: Sparks v. Long Bell Lumber Co., La.App., 175 So. 134; Landers v. New Iberia Motor Co., La.App., 155 So. 278; Castain v. O. M. Gwin Const. Co., La.App., 150 So. 50; Sweet v. Louisiana Long Leaf Lbr. Co., 18 La.App. 238, 138 So. 171; Vignaul v. Howze, La.App., 150 So. 88; Dodd v. Lakeview Motors, La.App., 149 So. 278. All of these cases involved loss of sight of an eye.

 Plaintiff is not totally disabled to perform manual labor because of the loss of sight of one eye. Many men likewise afflicted may be found rendering satisfactory service in nearly every character of work or business. It is probably true that the rules of some businessmen bar the employment of persons having only one good eye, but there are numerous others who do not draw the line on that account. The Workmen's Compensation Law classifies the loss of an eye as a specific disability and fixes the term of compensation therefor at 100 weeks. The trial judge followed this law in fixing the award in plaintiff's favor.

 It is shown that plaintiff worked by the hour only. He was paid twenty-five cents per hour. His work was somewhat irregular. He would earn as much as $15 some weeks, while for others his wages would be considerably less than $10. He worked some each day of the week, excepting Sunday. The lower court evidently reached the conclusion that compensation payments due him should be based upon a week of six working days of eight hours each. This is obviously correct.

We find no error in the judgment appealed from and it is hereby affirmed with costs.