215 So.2d 857 (1968)
Roy ROBERIE, Plaintiff and Appellee,
v.
ASHY CONSTRUCTION COMPANY, Inc., Defendant and Appellant.
No. 2463.
Court of Appeal of Louisiana, Third Circuit.
October 31, 1968.
Rehearings Denied December 5, 1968.
Writ Refused January 24, 1969.
*859 Guillory, Guillory & Guillory by I. J. Guillory, Jr., Eunice, for defendant-appellant.
Daniel J. McGee, Mamou, Andrew Vidrine, Church Point, for plaintiff-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
The plaintiff, Roy Roberie, seeks workmen's compensation benefits for total and permanent disability resulting from the loss of sight of an eye. The defendant employer is Ashy Construction Company, Inc. The district judge awarded the benefits sought but denied plaintiff's prayer for penalties and attorney's fees. The defendant appealed. Plaintiff answered the appeal, requesting that the judgment be amended to allow penalties and attorneys fees.
There is little, if any, dispute as to the facts. Plaintiff was working as a dragline oiler and helper, assisting in clean-up operations and filling slush pits at the site of an abandoned oil well. He attempted to pull a sack or bag from dried mud. The sack tore open and a substance, later determined to be caustic soda, flew into his face. He suffered a severe chemical burn to his right eye and has permanently lost the sight thereof.
Essentially, defendant contends the work of a dragline oiler and helper is common labor, as distinguished from skilled employment, and that plaintiff will not be substantially handicapped in competing with able bodied workers in the flexible common labor market. Hence, defendant contends plaintiff should be awarded only 100 weeks benefits for the loss of an eye, under the *860 schedule set forth in LSA-R.S. 23.1221(1). Defendant relies on cases awarding only 100 weeks for the loss of an eye to claimants performing common labor.[1]
On the other hand, plaintiff contends the work of a dragline helper and oiler is skilled and the loss of the sight of an eye disables him from returning to employment of a similar character. He relies on cases holding a skilled workman is totally disabled if the loss of an eye prevents him from returning to the same kind of employment.[2] Furthermore, plaintiff takes the position that even if the court finds the work was common labor, he is disabled. He argues that, as a result of the accident, the injured right eye has become abnormally sensitive to sunlight, wind, dust and other irritating substances and, when so affected, causes a sympathetic reaction in the good left eye.
In Anderson v. Rowan Drilling Company, La.App., 150 So.2d 828 (3rd Cir. 1963), writ of certiorari refused 244 La. 222, 151 So.2d 693, we recognized it is often difficult and unrealistic to determine disability to perform "work of any reasonable character", as set forth in the compensation statute,[3] on the basis of a classification of the employment as skilled, semiskilled or common labor. The essence of the inquiry is whether the employee is disabled to do work of any reasonable character within the intendment of the compensation statute. Each case must stand on its own peculiar facts. "As the extent of skill required in the work performed prior to accident increases, there should be correspondingly increased insistence that the new work closely resembled the old. Nothing more definite than this is possible or practical." Malone, Louisiana Workmen's Compensation Law & Practice, Chapter 13, Section 275 (1962 P.P., page 118).
In the Anderson case, supra, the plaintiff, 20 years of age, had been working about 14 months as a "roughneck" on a drilling rig, performing duties both on the floor of the rig and occasionally as a "derrick man". He developed a sensitivity to certain chemicals used in the drilling operations. The majority held the evidence showed no particular training, experience or skill was required to perform the duties of a roughneck. The only requirement was that the employee pass a physical examination. Any inexperienced person could go to work immediately as a roughneck if physically able to do so. Under the facts, the majority concluded "plaintiff was not specially equipped by training and experience to do only the work of a roughneck, particularly in view of the relatively brief period of time he was engaged in that type of work, and thus he was not a `skilled worker,' as that term as been used in our jurisprudence relating *861 to claims for workmen's compensation benefits." Benefits were denied.[4]
Let us now examine the particular facts of the present case. The plaintiff, 45 years of age, has only a fifth grade education and has worked most of his life as a farmer. He says he first left the farm and "worked out" about ten years ago, when he went to New Orleans and worked "with some engineers" in a cold storage plant. After a few months he returned to the farm.
The next time plaintiff "worked out" was for the defendant, Ashy Construction Company, about a year and a half or two years before the accident. He worked under a dragline operator, Harry Hawkins, who testified that on that first occasion plaintiff worked a few months and then stopped and went back to the farm for a year. Later he returned to work under Harry Hawkins and had been working about three months when the accident occurred on December 31, 1965. Plaintiff testified the total of both periods of employment as a dragline oiler and helper was nine or ten months.
Plaintiff's duties were as follows: He greased and oiled the moving parts of the dragline and refueled it with diesel, these operations consuming about 15 minutes each day. The rest of the day, he worked under the direct supervision of the dragline operator. When they were clearing drilling sites or rights of ways, he hooked cables on trees to be moved by the dragline. This was described as the most dangerous part of the work because he had to watch for limbs and tree trunks as they were being pulled. When the dragline was digging canals, plaintiff placed stakes on the line to be followed. If the cable to the bucket broke or became fouled, plaintiff helped correct the problem. When moving the dragline, plaintiff assisted in moving the boards which provided a "board-walk." On some occasions, plaintiff had to drive the operator's pickup truck to obtain parts, supplies, etc. Generally, plaintiff simply did everything the operator directed him to do.
The evidence does not show that plaintiff was paid any more than "common-labor" wages. He does not argue that he was paid additional wages for semiskilled or skilled employment.
The dragline operator, Harry Hawkins, testified he considered plaintiff's work was skilled. With reference to training, Mr. Hawkins said that if a man is "reasonably intelligent * * * you can make an oiler out of him" in about three months. Hawkins says he personally trained the plaintiff and that he was a good dragline oiler.
There is evidence in the record that defendant has three one-eyed employees. Donald Chapman has worked for the defendant for several years as a mechanic and side-boom operator. Howard Latiolais has worked for defendant for 13 years as a mechanic. Ovey Cormier worked as a roustabout for about two years until he reached retirement age.
Applying the law, as set forth in Anderson v. Rowan Drilling Company, supra, to the particular facts of the present case, we think it is clear that the plaintiff was not specially equipped by training or experience to perform the work of a dragline oiler and helper. He was principally a farmer and had only worked for two brief periods, of seven months and three months respectively, as a dragline oiler. Although the dragline operator, Harry Hawkins, said that it took him three months to train plaintiff, we do not consider this to be sufficient to show that special training or experience is necessary for this type of work. The work was very simple and was actually performed by plaintiff without any previous training or experience. The lack of a *862 showing that he received any additional wage above that paid to common labor is, of course, strongly persuasive that the work was not considered skilled or semiskilled.
Under the cases cited in Footnote 1 above, the loss of an eye does not cause total and permanent disability in all types of employment. Here also, the loss of the sight of one eye does not disable the plaintiff from returning to common-labor employment, which is substantially the kind of work he was performing at the time of his injury.
Plaintiff contends alternatively that even if his employment was common labor, he is nevertheless totally and permanently disabled. The argument is: As a result of the accident the injured eye has become abnormally sensitive to sunlight, wind, dust, smoke and other irritants. When thus affected it causes a sympathetic reaction in the good eye, which becomes red and irritated. The resulting pain and discomfort disables plaintiff from performing common labor. Essentially, this is a medical question.
Immediately after the accident on December 31, 1965, plaintiff was seen by a general practitioner in Franklin, Louisiana, who sent him to Dr. Merrick J. Wyble, an eye specialist in Opelousas. Dr. Wyble diagnosed a severe chemical burn of the right eye and hospitalized plaintiff for about six days. Thereafter he followed the case. Two cornea transplants became clouded and were thus unsuccessful. Since the last transplant, Dr. Wyble has seen plaintiff about once a month to watch for infection and to be sure the good eye does not become involved. The injured eye has not been removed because Dr. Wyble thinks a prosthesis (false eye) inadvisable. The eye is completely white but could be covered by a patch or a colored artificial lense.
As a result of the scarring of the lid of the injured eye, the eyelashes tend to grow inward. About once every two months Dr. Wyble removes a few of these ingrowing eyelashes. All of the lashes could be surgically removed, but Dr. Wyble decided against this procedure because it is relatively simple to remove the ingrowing eyelashes.
Vision in the good eye is 20/70, but corrected with glasses to 20/25, which Dr. Wyble says is normal for a person of plaintiff's age. He found no abnormality in the left eye.
Dr. Wyble testified that, as a result of the accident, the injured eye has more than normal sensitivity to sunlight, wind, dust and chemical irritants. When the injured eye is thus irritated, the left eye also sympathetically develops tearing, redness and irritation.[5] We construe Dr. *863 Wyble's testimony as a whole to say that under the day-to-day working conditions of most common labor jobs, the irritation of the right eye, due to sunlight, wind, dust etc., and the resultant sympathetic reaction in the left eye, would cause plaintiff substantial discomfort. Applicable here is the established jurisprudence that a workmen's compensation claimant is considered totally disabled if he is unable to work without enduring substantial pain and suffering. See Thomas v. Gates, Inc., La.App., 157 So.2d 263 (3rd Cir. 1963) and the authorities cited therein. We conclude that plaintiff is permanently and totally disabled from returning to the type of work he was performing at the time of the accident.
The final issue is penalties and attorney's fees. The facts are that, beginning with the injury on December 31, 1965, the defendant paid weekly benefits and also the hospital bills and certain other medical expense which was stipulated to total $1,690.83. About 34 weeks after the accident, and after Dr. Wyble had performed the second unsuccessful cornea transplant, he rendered to the defendant his "Surgeon's Final Report and Bill" of date, August 22, 1966. The bill for Dr. Wyble's services is in the sum of $1,695.29. No part of this doctor's bill had been paid as of the time this suit was filed on January 22, 1968. Plaintiff contends this was an arbitrary refusal to pay the remainder of the $2,500 allowable in medical expense and that he is therefore entitled to penalties and attorney's fees.
Mr. L. A. Cummings, secretary and treasurer of the defendant, Ashy Construction Company, Inc., explained that they "carry their own" workmen's compensation insurance and he handles this part of the business. About the 34th week after the accident (apparently this was on receipt of Dr. Wyble's Final Report and Bill for Services dated August 22, 1966) he offered to pay plaintiff 100 weeks for the loss of an eye and permit him to return to work, in settlement of any claim. Cummings says he did not hear further from plaintiff regarding this offer and assumed it was because plaintiff had a pending tort suit and did not want to return to work. Mr. Cummings admits they received Dr. Wyble's bill in the sum of $1,695.29 and knew the defendant was liable for the remainder of the maximum $2,500 medical expense. His only explanation for the failure to pay the portion of this doctor's bill for which defendant is liable is that he was waiting to hear whether the plaintiff was going to accept his offer of 100 weeks and return to work.
Correspondence in the record indicates that during negotiations before suit was filed, the attorneys for the defendant had been advised that the statutory maximum for medical expense had been exceeded and did not discover otherwise until after suit was filed. But, this cannot excuse the defendant. Mr. Cummings knew it owed part of the doctor's bill and gives no reasonable excuse for failure to pay it. On the date of the trial, March 20, 1968, it was stipulated that only $1,690.83 of the medical expense had been paid, and that no payments had ever been made on the bill of Dr. Wyble, whose charges "are entirely outstanding."
The penalty statute applicable to uninsured employers is LSA-R.S. 23:1201.2.[6] Under the facts of this case the defendant *864 was not arbitrary in discontinuing the payment of weekly benefits beyond 100 weeks, (which defendant paid) because there was a serious bona fide dispute as to whether plaintiff was entitled to that amount, under the schedule for loss of an eye, or to 400 weeks for total and permanent disability. Martin v. Travelers Insurance Company, La.App., 200 So.2d 141 (1st Cir. 1967); Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965).[7]
However, the defendant employer's failure and refusal to pay the remaining $809.17 of medical expense, for which it was undoubtedly liable, was arbitrary, capricious and without probable cause. The defendant is therefore liable for penalties and attorney's fees. See Fruge v. Hub City Iron Works, Inc., La.App., 131 So.2d 593 (3rd Cir. 1962).
The next issue is the amount of the penalty to be awarded. LSA-R.S. 23.1201.2, subd. A, provides in pertinent part:
"Any employer whose liability for claims arising under the provisions of this Chapter is not covered by insurance, shall pay the amount of any claim due under the provisions of this Chapter, within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer to a penalty, in addition to the amount of claim due, of 12% of the total amount of such claim, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due, and all reasonable attorney's fees for the prosecution and collection of such amount."
The question here is whether the 12% penalty should be assessed only against the sum of $809.17 in medical expense which the employer arbitrarily refused to pay, or also against the remaining 300 weekly compensation payments, which we have found the employer was not arbitrary in refusing to pay, but for which we are affirming judgment. We have decided that these penalties should be assessed at 12% of the $809.17 arbitrarily withheld. Usually, under the terms of the statute, penalties are assessed on the basis of the "total amount of the claim", not just the portion arbitrarily withheld, unless there has been an unconditional tender of the amount indisputably due. Fruge v. Pacific Employer Ins. Co., 226 La. 530, 76 So.2d 719 (1955); Sensat v. State Farm Fire and Casualty Company, 176 So.2d 804 (La.App. 2d Cir. 1965), certiorari denied, 248 La. 419, 179 So.2d 17; Fontenot v. Travelers Insurance Company, La.App., 125 So.2d 664 (1960). However, the rationale for this *865 is that the claimant is forced to litigate the entire claim by the employer's arbitrary denial of a part of it, so therefore penalties and attorney's fees should be based upon the entire amount of the judgment. See the Fruge case, 226 La. 530, 76 So.2d 721, and Fontenot, La.App., 125 So.2d 667. This rationale is not applicable to the present situation, where the arbitrary denial occurred only with regard to a severable claim by way of a side-issue only incidentally involved in a suit primarily occasioned by a nonarbitrary defense.
The amount of "reasonable" attorney's fees allowed under the statute, addresses itself to the discretion of the court. Factors which may be considered include the amount involved and the degree of skill and volume of work necessarily performed by the attorney in the prosecution of the claim. Cain v. Employers Casualty Company, 236 La. 1085, 110 So.2d 108; Redding v. Cade, 158 So.2d 880 (3d Cir. 1964). In the present case, we think an attorney's fee of $750 is appropriate.
For the reasons assigned, the judgment appealed is amended to award plaintiff a penalty of 12% of $809.17, together with a reasonable attorney's fee of $750. Otherwise than as herein amended, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
Fruge, J., votes for rehearing, adhering to opinion of District Court denying penalties.
NOTES
[1] Stanley v. Industrial Lumber Company, La.App., 193 So. 367 (1st Cir. 1940), blasting stumps; Matthews v. Louisiana Long Leaf Lumber Company, La.App., 55 So.2d 33, driving a log truck; Weber v. Kieckhefer Containing Company, La. App., 45 So.2d 562, maintaining machinery; Hagen v. Associated Indemnity Corporation, La.App., 20 So.2d 629, a carpenter; Jones v. New Orleans Furniture Manufacturing Company, La.App., 17 So.2d 847, furniture manufacturing; Sparks v. Long Bell Lumber Company, La.App., 175 So. 134, edgerman in a sawmill.
[2] Lindsey v. Continental Casualty Company, 242 La. 694, 138 So.2d 543 (1962), a mechanic in a farm equipment repair shop; Trahan v. Louisiana State Rice Milling Company, La.App., 100 So.2d 914 (1st Cir. 1958), sweeper and oiler of moving machinery in a rice mill; Aymonde v. State National Life Insurance Company, La.App., 138 So.2d 460 (3rd Cir. 1962), insurance salesman and debit collector disabled from driving; Bellard v. Insurance Company of North America, 193 So.2d 922 (3rd Cir. 1967), oil well swabber who drove heavy equipment truck.
[3] LSA-R.S. 23:1221.
[4] The majority and dissenting opinions in Anderson v. Rowan Drilling Company, La.App., 150 So.2d 828 (3rd Cir. 1963) give a review of the jurisprudence, and the factors to be considered in cases of this type.
[5] Q. So that the irritation which you are talking of there, would not be the normal irritation

A. No.
Q.that say, I would have?
A. No, because when you put on your sunglasses, you feel comfortable. Of course, his is irritated and whatnot. He's still not comfortable.
Q. When you talk about not being comfortable, Doctor, and causing irritation, is there anyway for you to determine objectively by observing the amount of redness or the obvious irritation that this would be bothersome to a certain extent that a man could not carry on certain activities?
A. I would think that in certain weather and everything, changes. On a nice comfortable day he is probably very comfortable but on a high, on a windy day like today, I would think he would be very uncomfortable, and on a cloudy day he would probably be fairly comfortable. On a bright and sunny day, working on a shell road possibly, he would be very uncomfortable. It varies, and again this varies with the individual's pain threshhold, and I don't think that anybody can measure a pain threshhold in different individuals.
Q. So, if this man had to work from day to day in the weather, which would include days of bright sunlight, windless, bright sunlight, windy, relatively cloudy days, calm, relatively cloudy days, windy, and sometimes say like on shell roads, which would reflect the light, and if he had to do this day in and day out throughout the day, from eight to ten hours during the day, do you think that he would be able to carry on these activities?
A. He would have difficulties at times.
Q. Would these be substantial difficulties?
A. It would vary with the patient. In other words, he's got to do and he's got to do it, he probably could, you know, he could probably put up with it.
[6] This statute reads in pertinent part as follows: "Any employer whose liability for claims arising under the provisions of this Chapter is not covered by insurance, shall pay the amount of any claim due under the provisions of this Chapter, within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer to a penalty, in addition to the amount of claim due, of 12% of the total amount of such claim, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due, and all reasonable attorney's fees for the prosecution and collection of such amount. Any such employer who at any time discontinues payment of claims due and arising under the provisions of this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the penalties set forth above, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claims."
[7] The penalty statute applicable to insurers, LSA-R.S. 22:658, is essentially the same as that applicable to uninsured employers, LSA-R.S. 23:1201.2, and hence jurisprudence construing one statute is persuasive in construing the other. Plaisance v. Collins Industries, Inc., 193 So.2d 816.