FRUGÉ, Judge.
This is a suit in workmen’s compensation instituted by Donald Collins against the Southern Pulpwood Insurance Company, insurer of the LaSalle Wood Company, resulting from an accident which occurred on or about December 29, 1959. The plaintiff was employed by Eddie Collins, an independent contractor, working for the LaSalle Wood Company, 1 as a laborer, whose duties included the cutting and loading of pulpwood, driving of a tractor, and occasionally operating a saw and doing other related heavy manual labor. This action was instituted against the insured owner and the coverage is admitted by the defendant. The lower court rendered judgment in favor of the plaintiff for total1 permanent disability and fixed the compensation payments at $35.00 per week. From this judgment, the defendant perfected this appeal to this Court, and plaintiff answered the appeal seeking penalties and attorney fees.
There is ample proof in the record that the plaintiff did sustain an accident within the meaning and contemplation of the workmen’s compensation laws. However, it is-the contention of the defendant-appellant that the plaintiff was not in any manner injured while working on the job, and further that if he did receive any injury, the injury was only slight and that he is fully recovered from his injuries. It is the further contention of the defendant that if the plaintiff has any disability, the condition is of a congenital nature.
The plaintiff was first seen by Dr. I. C. Turnley, Jr., a general practitioner of Jena, Louisiana. Dr. Turnley testified that after the examination of the plaintiff there were positive findings of swelling, soreness, pain on pressure and some muscle spasm of the right thigh. It was his diagnosis at that time that the plaintiff had suffered a contusion to the lateral side of the right thigh, with possible fascia lata tear. He-prescribed pain relieving drugs and muscle relaxing agents and diathermic treatments. Afterwards, he saw plaintiff frequently giving the plaintiff diathermic treatments. On February 5th, he referred him to Dr. Banks, Orthopaedic Surgeon at Alexandria, Louisiana, and afterwards advised him to-see Dr. Heinz K. Faludi, Neurosurgeon of Shreveport, Louisiana. Dr. Turnley testified that the plaintiff continued to be symptomatic. He continued to see the plaintiff until May 13, 1960. While Dr. Turnley hadi *640 referred the plaintiff to Dr. Faludi, and while Dr. Faludi examined the plaintiff on different occasions, he only had the first report of Dr. Faludi. On May 13, 1960, Dr. Turnley testified that he was of the opinion that the plaintiff should try to return to his usual work. In testifying, Dr. Turnley stated:
“I felt that he should, after five months that he should try to return to his usual work. Because with the symptoms that I could elicit from Donald I could not tell that there was a very, well I should say, a real serious spondylolisthesis from his, you know, from his symptoms. And I thought that he should try to work to see what would happen. Certainly he or anyone else would understand that if these symptoms continued to bother him and continued to become worse or if the work made them worse he certainly would know to stop and return.”
Dr. Turnley further testified that when he discharged the plaintiff in May, 1960 that he so informed the insurance company by telephone conversation with its representative in Shreveport that it was a qualified release.
Dr. T. E. Banks, orthopaedic surgeon of Alexandria, Louisiana, saw the plaintiff in February of 1960, the plaintiff having been referred to him by Dr. Turnley. Dr. Banks found that the plaintiff had a weak or unstable back. He testified that the X-rays taken by him revealed a spina bifida occulta involving the posteria processes of L-5 and the X-rays farther revealed very acute lumbar lordosis at the lumbosacral joint with a marked angle. Dr. Banks stated that the spina bifida occulta is a congenital change and so was the acute lumbar angle. On direct examination he was of the opinion that from his examination there was no aggravation of any of these congenital abnormalities by trauma. On cross examination, Dr. Banks testified that it was possible that the plaintiff had a spondylolis-thesis at the time of the accident which could have become symptomatic after the accident and that a qualified physician who had seen plaintiff four or five times would be in a better position to evaluate the plaintiff than a physician who had seen the plaintiff only on one occasion.
Dr. Heinz K. Faludi, a Neurosurgeon of Shreveport, Louisiana, examined plaintiff on March 4th, June 13th, August 12th, September 12th, and November 28, 1960. Dr. Faludi was of the opinion that the plaintiff had a back condition known as a spon-dylolisthesis, and in addition to that had a congenital defect in the formation of the L-S vertebra with sclerosis around the articular process. These conditions were pointed out by Dr. Faludi with X-ray films taken by him at the time of his deposition. He was of the opinion that plaintiff had this unstable back and he felt that the accident sustained by plaintiff on December 29, 1959 aggravated the back condition and caused it to become symptomatic. He first prescribed heat treatments and sleeping on a hard mattress and later prescribed a back brace. He felt that plaintiff’s symptoms were greater on the second visit and continued on each examination and remained relatively constant throughout the entire time of his examinations and treatment. After his examination in August of 1960, he prescribed light work for the plaintiff.
The record also indicates that there were three lay witnesses who testified that plaintiff was disabled from performing heavy manual labor and whose testimony is un-contradicted.
A workman is totally and permanently disabled within our workmen’s compensation laws if his injury disables him from performing the work he is accustomed to doing or work of a reasonable character which he is qualified to perform. Pierce v. Cochran & Franklin Company, La.App., 175 So. 170; Brannon v. Zurich General Accident & Liability Insurance Company, 224 La. 161, 69 So.2d 1; Wright v. National Surety Corporation, 221 La. 486, 59 So.2d 695. It has been repeatedly held by the *641 Courts of this State that a man is entitled to compensation if to do work of a reasonable character he must work in pain as if he is forced to work in pain it will materially increase not only the hazards to his own health and safety, but also those to his fellow employees. Knispel v. Gulf States Utilities Co., Inc., 174 La. 401, 141 So. 9; Stieffel v. Valentine Sugars, Inc., 189 La. 1091, 179 So. 6; Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228; Lee v. International Paper Co., La.App., 16 So.2d 679; Brown v. Furr, La.App., 19 So.2d 283; Schneider v. Travelers Insurance Co., La.App., 172 So. 580; Hibbard v. Blane, La.App., 183 So. 39; Rigsby v. John W. Clark Lumber Co., La.App., 28 So.2d 346; Murphy v. B. Mutti, Inc., La.App., 166 So. 493; Godeaux v. Travelers Ins. Co., La.App., 58 So.2d 427; Anders v. Employers Liability Assur. Corp., La.App., 50 So.2d 87; Stansbury v. National Auto & Cas. Ins. Co., La.App., 52 So.2d 300; and Newsom v. Caldwell & McCann, La.App., 51 So.2d 393.
We feel as the trial judge did, namely that plaintiff’s unstable back was aggravated by the trauma which occurred in December of 1959. Dr. Turnley and Dr. Faludi were both of the opinion that plaintiff’s unstable back was aggravated by the accident which occurred on December 29, 1959, and he could not do heavy work thereafter without suffering undue hardship and pain and causing his back to become progressively worse. The Court held in the case of Roy v. Guillot, La.App., 84 So.2d 469, that if an employee’s condition is such that after the accident and as a result of injuries sustained, that he is unable to further pursue the same work or work of the same or similar character, it matters not that he was already afflicted with a previously existing physical condition which had not reached a disabling state. Dr. Faludi testified that the spondy-lolisthesis might become asymptomatic and that plaintiff might be able to do heavy manual work in the future or, on the other hand, that the condition might remain symptomatic and he might not improve and the condition might become progressively worse. The term of disability was indefinite, and accordingly, the plaintiff is entitled to judgment for total and permanent disability.
The next contention of the defendant-appellant is that the lower court erred in fixing the compensation payments in the amount of $35 each. The payments which were made to the plaintiff were in the amount of $19.50, although the defendant was not specific as to the basis of that figure. It is undisputed that Donald Collins was paid $1.00 per cord on all of the wood hauled by him, his father and Burl Hailey working together. The lower court made the factual determination and Donald Collins’ rate of pay was $9.00 per day. This was based upon the testimony that they hauled three loads of three cords each per day under normal conditions. The above conclusion of the lower court is amply supported by the evidence. The plaintiff’s father, Eddie Collins, testified (Transcript, page 187) that he hauled three loads per day if weather and working conditions permitted.
The defendant introduced evidence to show that during the week in which Donald Collins was hurt, they did not average three loads a day for each day. However, this does not throw light on the daily wage of the plaintiff, as they did not attempt to show how many days during that week the plaintiff had actually worked.
In Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399, the Supreme Court sets the formula for calculating the weekly wage of a claimant. The Court stated:
“After determining an employee’s daily wage, the six day week is to be employed in calculating the weekly wage.”
The Carrington case has been cited many times and referred to in Miller v. United *642 States Fidelity & Guaranty, La.App., 99 So.2d 511, as an “inescapable directive” even though a workman had never worked on the basis of a six-day week. See Graham v. Blewer, La.App. 3 Cir., 124 So.2d 579; Murphy v. American General Ins. Co., La.App. 2 Cir., 122 So.2d 100; Pope v. Coney, La.App. 1 Cir., 119 So.2d 136; Darby v. Johnson, La.App. 1 Cir., 118 So.2d 707.
Burl Hailey, Eddie Collins and Donald Collins testified that the plaintiff earned approximately $9.00* per day, weather permitting. The defendant attempted to contradict this testimony by showing that Eddie Collins produced 18.75 cords of wood in the four-day period from December 28 through December 31. They were unable to show, however, whether this production represented two days’ work or more. Mr. Whitehead, the owner of the LaSalle Wood Company for whom Eddie Collins worked, did not deny the possibility that all of this wood was cut during a period of two days. Therefore, the defendants’ evidence does not really contradict the plaintiff’s testimony in regard to his earnings. We believe that the lower court correctly found that the preponderance of the evidence established that the amount of the compensation payments should be computed from plaintiff’s earnings of $9.00 per day on a six-day basis.
The plaintiff also sought penalties and attorney fees in this matter alleging that the defendant’s refusal to pay compensation was arbitrary and capricious. The Trial Judge in his opinion found that Dr. Turnley’s statement to the defendant, that the plaintiff was released to go to work, was only clarified upon trial at work. However, the evidence reveals that Dr. Turnley spoke with the insurance Company’s representative, that he thought plaintiff should try to do some work but that he should return in the event that he could not do heavy manual work. Dr. Turnley testified that he told this to the insurance representative at the time of the discharge of plaintiff, or shortly thereafter. This conversation with the defendant’s representative coupled with the several reports of Dr. Faludi relative to his examinations of plaintiff and his findings of undoubted disability, which the defendant had in its possession before the filing of this suit, the defendant’s refusal to continue to pay compensation is arbitrary and unreasonable. Gloston v. Coal Operators Casualty Company, La.App., 85 So.2d 100.
Accordingly, plaintiff is entitled to 12% damages on all unpaid and past due compensation, plus attorney fees in the amount of $2,000.00.
For the foregoing reasons, the judgment of the Trial Court is amended, awarding plaintiff 12% damages on all past due and unpaid compensation, plus attorney fees in the amount of $2,000.00 and as thus amended is affirmed.
Amended and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.