158 So.2d 880 (1963)
Kerlin REDDING, Plaintiff-Appellee,
v.
S. H. CADE et al., Defendants-Appellants.
No. 971.
Court of Appeal of Louisiana, Third Circuit.
December 3, 1963.
Rehearing Denied January 7, 1964.
*882 Hall & Coltharp, by L. H. Coltharp, Jr., DeRidder, Holloway & Baker, by William H. Baker, Jonesboro, J. Edwin Bailey, Jr., Shreveport, for defendants-appellants.
Gerard F. Thomas, Jr., Natchitoches, for plaintiff-appellee.
Before TATE, FRUGE, and CULPEPPER, JJ.
TATE, Judge.
This is a suit for workmen's compensation. The trial court held the plaintiff to be totally and permanently disabled.
The defendants appeal, and the plaintiff answers the appeal.
The plaintiff Redding was directly employed by the defendant Brewton, who was a pulpwood producer performing work under sub-contract for the defendant Cade. Cade was a pulpwood dealer in the business of buying, cutting, selling, and hauling pulpwood. The plaintiff Redding was injured in operations of Cade and Brewton conducted on lands owned by the Continental Can Company ("Continental"), which is also joined as a co-defendant.
The trial court held all of these defendants (Cade, Brewton, and Continental), as *883 well as their insurers, liable in solido to the plaintiff for compensation benefits. In addition, the Southern Casualty Insurance Company ("Southern"), the insurer of Cade and Brewton, was held liable for penalties for the arbitrary non-payment of compensation.
There is virtually no conflict in the evidence. We see little need to repeat the trial court's analysis of it, which in our opinion is correct. We will simply state that the record reflects without substantial dispute that the plaintiff was injured at work on July 17, 1962, and that the injury was shortly thereafterwards reported to Brewton and Cade and their insurer, Southern. Without any contradiction whatsoever, the medical evidence shows that, as a result of his work injury, the claimant is totally and permanently disabled from a return to the heavy duties of his employment by reason of a back (herniated disc) condition.
The record further shows: Southern received notice of the accident and undisputed medical reports indicating the plaintiff's disability, yet without any justification whatsoever this insurer failed to pay the claimant workmen's compensation benefits, despite repeated demands by his attorney. See, e. g., testimony of Southern's general manager to this effect at Tr. 165-166. Southern is thus undoubtedly liable for penalties under the jurisprudence, which holds that "a failure to pay or to tender an amount for which the employer is undoubtedly liable under the compensation act is arbitrary or unreasonable so as to require the imposition of statutory penalties whenever such failure is without legal basis and there is no serious question upon the merits that the employee is entitled to payment of such compensation benefits * * *. [Many citations omitted]", Fruge v. Hub City Iron Works, Inc., La.App., 3 Cir., 131 So.2d 593, 599, certiorari denied.
The principal remaining issues of this appeal requiring discussion are: (1) Southern's contention that the assessment of penalties was premature and, alternatively, that a reduction should be made in penalties awarded by the trial court; (2) The contention of Continental and its insurer that Continental should not be held liable as a principal (i. e., a statutory employer under LSA-R.S. 23:1061) for injuries sustained by employees of Cade and Brewton, since allegedly Continental merely sold to Cade the timber with which the Cade-Brewton operations were concerned and merely bought the pulpwood manufactured from such timber, and thus was only in a buyer-seller not a principal-contractor relationship with Cade in such operations.
1. Southern's Penalty Liability.
(a) Alleged Prematurity.
At the oral argument of this appeal, able counsel for Southern contended that the issue as to penalties was premature and not ripe for adjudication, since the trial court had refused a continuance and had incorrectly heard the case on the merits. Counsel contends that penalties should therefore be disallowed.
Aside from referring to the completely distinguishable case of Glover v. Schuylkill Products Co., La.App. 1 Cir., 138 So. 2d 15, counsel bases such contention upon the circumstance that, due to the failure of the defendant insurer to file an answer, the plaintiff had obtained a preliminary judgment against such insurer on December 14, 1962, which ordered the defendant to pay compensation, and pursuant to which Southern was paying weekly compensation at the time of trial.
The preliminary judgment was obtained under LSA-R.S. 23:1315 and 1316 of the compensation act. These provisions relate to "a preliminary judgment [obtained by the plaintiff when the defendant has failed to answer,] for payment of such compensation as is claimed to be payable until such time as the hearing of the issues on the merits is fixed by an order of court at the request of the defendant * * *", LSA-R.S. 23:1316.
*884 Such preliminary judgment is "in the nature of a penalty against the defendant for delaying the trial on the merits by his failure to file an answer within ten days or within an extension thereof granted at the discretion of the trial judge." Fontenot v. Great American Indemnity Co., La.App. 3 Cir., 127 So.2d 822, 831. The Fontenot decision also notes that "[t]he obvious purpose of the above statutory provisions is to obtain an early trial on the merits in workmen's compensation cases * * *." 127 So.2d 831.
In our opinion, the granting of a preliminary judgment does not prevent the claimant thereafter from setting the case for trial and obtaining a judgment on the merits, since its primary statutory purpose is to expedite the trial on the merits in workmen's compensation cases.
Further, the defendant insurer filed an answer of general denial on January 7, 1963.[1]
In view of the defendant insurer's denial of any liability at all in the premises, the plaintiff is entitled to have the defendant's liability for compensation fixed. D'Antoni v. Employers' Liability Assurance Corp., 213 La. 67, 34 So.2d 378; Washington v. Independent Ice & Cold Storage Co., 211 La. 690, 30 So.2d 758. A justified suit for compensation is not rendered premature because a defendant resumes the payment of compensation which, previously, it had arbitrarily failed to pay. Boss v. Marquette Cas. Co., La.App. 3 Cir., 150 So.2d 67, certiorari denied.
The plaintiff's demand for penalties is therefore not premature.
(b) Amount of Penalties.
Southern's counsel next contends that the trial court was in error in assessing 12% penalties against the entire amount of compensation awarded by the judgment, instead of only against that compensation which was or will become overdue for more than sixty days. In our opinion, there is merit to this contention by Southern.
Under LSA-R.S. 22:658, the arbitrary failure of an insurer to pay, within 60 days after demand, amounts due by it "* * * shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss * * *, together with all reasonable attorney's fees for the prosecution and collection of such loss * * *." (Italics ours.)
The trial court reasoned that this statutory language required the penalty of 12% to apply not only to weekly compensation payments then overdue or to become overdue for more than 60 days, but also to all weekly compensation payments awarded by the judgmenti. e., the court held the insurer liable for 12% penalties upon the entire award, considering the latter to be "the total amount of the loss."
We must admit that there is considerable force to this conclusion and that it may well be justified by the literal terms of the penalty statute. In fact, our brothers of the Second Circuit have placed such an interpretation upon the quite similar provision (providing for 12% penalties upon the "total amount of the claim") in the parallel statutory provision penalizing uninsured employers for the arbitrary non-payment of compensation, LSA-R.S. 23:1201.2. See Moore v. Pullig, La.App. 2 Cir., 123 So.2d 826.
However, the Supreme Court itself, in awarding penalties against the "total amount of the loss" under LSA-R.S. 22:658 (which applies to insurers only), has always, so far as we could find, provided for such 12% penalty to be due only on *885 weekly compensation payments then due or which might become overdue more than sixty days in the future. Seal v. Lionel F. Favret Co., 238 La. 60, 113 So.2d 468; Humphreys v. Marquette Casualty Co., 235 La. 355, 103 So.2d 895; Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695.[2]
So far as we can discover, likewise, the many court of appeal decisions which have allowed 12% penalties, have also calculated them in a like manner, instead of basing them upon the entire amount of the compensation award. The decisions seem to have mentioned this point only twice, however:
In Guillory v. Coal Operators Cas. Co., La.App. 1 Cir., 95 So.2d 202, a trial court judgment which had assessed the 12% penalties against the entire award was amended by the court of appeal, with the simple statement that under the jurisprudence following Wright v. National Surety Corporation such penalty has only been assessed against compensation delinquent at the time of judgment. And in Doucet v. Travelers Insurance Co., La.App. 3 Cir., 149 So.2d 448, this holding in the Guillory case was cited with approval, in affirming a trial court decree limiting the 12% penalties so as to apply only to compensation payments overdue more than sixty days.
If the jurisprudence can be rationalized, perhaps the explanation for its so limiting the penalties is that, for 12% penalty purposes, the "total amount of the loss" is considered only those compensation payments then due and exigiblethat is, the "loss" is not considered to accrue, for 12% penalty purposes, until the compensation payment is due.
We fully realize, however, that the jurisprudence so limiting the 12% penalties may have resulted merely from a mechanical following of the decree in the Wright case, the parent decision in this line of jurisprudence, and that the Supreme Court may have failed to accord the penalty statute the construction for which the plaintiff here contends, solely because such contention was not raised by the pleadings or arguments in the cited decisions.
Nevertheless, under this jurisprudence, we feel that the judgment herein should therefore be amended to provide that the 12% penalties apply only upon compensation payments overdue more than 60 days (including those overdue for such period prior to suit and not paid until after suit was filed), and also to those which in the future shall become overdue for more than 60 days.
(c) Amount of Penalty Attorney Fees.
In addition to the 12% penalties, the trial court awarded $5000 as penalty attorney fees. The appellant insurer contends that this amount is excessive. By answer to the appeal, the claimant prays that it be increased.
The penalty statute provides that, when penalties are allowed, reasonable attorney's fees shall be also allowed for the prosecution and collection of the claim. LSA-R.S. 22:658. The penalty attorney's fee is fixed with reference to services needed to effect the total amount of the recovery; it thus is not based just upon the arbitrarily withheld portion of it. See Williams v. Travelers Insurance Company, La.App. 3 Cir., 157 So.2d 356 (Docket No. 950; rendered October 30, 1963) for discussion, as well as the decisions cited below.
As further stated in the leading decision of Cain v. Employers Casualty Co., 236 La. 1085, 110 So.2d 108, 111, the penalty attorney fee is fixed and determined "upon the basis of the attorney's skill and the amount of work performed by him in the prosecution *886 and collection of the total claim". The Cain decision also recognized that the maximum attorney fee provided by the compensation act itself (which in the interest of the claimant limits his attorney's fees to less than that prevailing in other types of personal injury suits), is not a determining factor in the amount of penalty attorney's fees to be assessed against the employer's insurer which arbitrarily fails to pay compensation.
In fixing the penalty attorney's fee in the amount of $5000, our learned trial brother pointed out that a workmen's compensation claim is of the same general nature as litigation upon a tort claim. In this latter type of claim, the customary minimum legal fee for a claimant's attorney working on a contingent fee basis is one-third of the amount of the recovery, when trial work is involved. The trial court felt that, since the total amount of the claimant's recovery herein (including the statutory penalty of 12%) is in excess of $15,000, therefore a fee of $5000 appeared to be appropriate and reasonable.
A majority (but not all) of this entire court disagrees with this determination by our trial brother. The reasoning of the majority is that the penalty attorney's fee should be fixed in accordance with the amount of work involved and the amount of the recovery, but that such fee should not necessarily be based upon one-third of the total recovery as in tort suits (which require proof of negligence in addition to proof of the personal injuries).
Although even a greater percentage-relationship between the fee and the award; has usually been allowed in penalty attorney's fees for recovery of smaller amounts of compensation benefits,[3] the penalty attorney's fees more recently awarded for 400-week judgments at the maximum weekly rate of $35, such as the present, have at the most varied between two and three thousand dollars.[4]
In fixing the penalty attorney's fee herein, we must note that the present case was hard-fought and resulted in a bulky record. The trial took two days in court. Out-of-court depositions were taken of six different witnesses on three different occasions. In addition, several other court appearances, in addition to the trial, were required in connection with the prosecution of the claim, and several discovery motions were likewise required.
We are not favored with any expert testimony as to a reasonable attorney's fee. (In this type of case there is no necessity for such proof, however. Cain v. Employers Cas. Co., 236 La. 1085, 110 So.2d 108.) In the absence of such expert proof, but taking into consideration the circumstances reflected by this record, a majority of this court has concluded that a reasonable attorney's fee should be fixed herein at $3,000, to be comparable with *887 the penalty attorney's fees awarded in the cases cited above. The decree will be amended accordingly.
2. Workmen's Compensation Liability of Continental Can Company.
The principal remaining question of this appeal concerns the contention of the defendant Continental Can Company ("Continental") and its insurer that the trial court erroneously held Continental liable in workmen's compensation.
As earlier noted, the plaintiff Redding was employed and injured in pulpwood operations conducted by the defendant Brewton as a pulpwood subcontractor of the defendant Cade. Redding was injured in connection with the Cade-Brewton operations of cutting timber on Continental's land, sawing it into a designated pulpwood length, and delivering it to Continental's paper plant, where the pulpwood was used in the manufacture of paper.
Cade and Brewton were engaged in these pulpwood operations on the land of Continental, pursuant to a contract between Cade and Continental, which is the operator of a large paper mill in the vicinity. Continental is made a party defendant on the theory that the Cade-Brewton pulpwood operations, in which the plaintiff was injured, were a part of Continental's business contracted out to Cade, by reason of which Continental as a principal is statutorily liable in compensation to Cade-Brewton employees injured while performing such work.
The plaintiff seeks to hold Continental liable under LSA-R.S. 23:1061. This statutory section provides that when a principal contracts out to subcontractors any of the work which is part of the principal's trade, business, or occupation, then such principal shall be liable in workmen's compensation to the contractors' employees injured while in the execution of such work. (The purpose of this statutory liability is to prevent a principal engaged in a hazardous business from contracting out his work in order to evade the principal's liability for workmen's compensation benefits to employees utilized in such work. See Malone, Louisiana Workmen's Compensation, 1951. Chapter 6, page 140.)
Continental claims that it is not a principal contracting out this work to Cade, but that it simply sold some standing timber to Cade, which it then repurchased from him as sawed pulpwood.
This defense is chiefly grounded upon a printed form contract (Exhibit "E"), which was executed by Continental and Cade, in which Continental is designated as the "seller" and in which Cade is designated as the "buyer".
Under this contract, Cade bought at a certain price per cord "only those trees or parts of trees marked for cutting by the Seller with paint, or otherwise designated specifically by Seller's field representative", and located upon a certain specified tract of land owned by Continental. Continental reserved the right "to cancel this agreement verbally through its field representative at any time, if in its opinion, proper forest practices, including normal utilization of available timber, are not being carried out by the Buyer in his cutting operations."
Continental was specifically given the right to inspect the cutting operations at any time. Cade was required to enter the land and remove the trees "in one continuous operation." Cade also covenanted to pay a certain specified amount per tree if he cut or damaged any tree not marked for cutting by Continental.
The evidence further shows: Cade and his crews cut timber into pulpwood of a specified length, which was then hauled by truck to Continental's paper plant, for use in the manufacture of paper. All of the timber cut on Continental's land by the Cade-Brewton operations was delivered as pulpwood to Continental's plant.
Further, Continental annually obtained approximately 100,000 cords of pulpwood (approximately one-fourth of its needs) *888 from timber grown on its own timber lands and harvested by pulpwood dealers such as Cade through "purchase" agreements such as the present.
In contending that Continental is not liable for workmen's compensation because the relationship between Continental and Cade was only that of buyer and seller, Continental's able counsel relies upon cases such as Garner v. Southern Pulpwood Insurance Co., La.App. 3 Cir., 149 So.2d 157, Benton v. Pope, La.App. 1 Cir., 130 So.2d 724, Smith v. American Employers Insurance Co., La.App. 2 Cir., 130 So.2d 494 and Cerie v. Malone, La.App. 3 Cir., 125 So.2d 254.
We agree, however, with the trial court that these cases are factually distinguishable and are not here applicable. All of the cited cases concern instances where the alleged principal was a purchaser on the open market of timber products in which he had never had any prior interest and over the harvesting and disposition of which he had no control.
In our opinion, the present factual situation is much more analogous to the facts in Stevens v. Mitchell, 234 La. 977, 102 So.2d 237, Jones v. Hennessey, 232 La. 786, 95 So.2d 312, and in Kline v. C. W. Dawson, 230 La. 901, 89 So.2d 385. In all of these decisions, the Supreme Court (reversing lower court determinations to the contrary) held that a principal who was in a nominal buyer-seller relationship with the claimant's immediate employer, was in actuality a principal contracting out part of its business, so that the claimants therein were entitled to compensation benefits from the principal because of injuries sustained in such work.
Quite similarly to the present, in Stevens v. Mitchell it was found that the timber really belonged to the principal, who had purchased it from the landowner. The intermediary (the plaintiff's immediate employer) who hired the crew to cut the timber and deliver it to the principal, was therefore really an independent contractor performing part of the principal's trade, business, or occupationthat is, cutting and hauling the logs to the principal's sawmill.
Likewise, in Kline v. Dawson, the difference between the landowner's selling price and the principal's "buying" price at its sawmill, was held to be really the compensation for the services performed by the intermediary (the plaintiff's employer) in delivering the logs to the principal's mill as part of the principal's business. See also court of appeal opinion and dissent therein. 84 So.2d 76.
And in Jones v. Hennessy, although the formal paper relationship between the principal and the claimant's employer was supposedly only that of buyer-seller, the Supreme Court held that the actual effect of the contractual relationship was to give the principal the exclusive right to the cross-ties cut by the plaintiff's immediate employer, especially since the principal's power to terminate the relationship required the intermediary producer-employer, as a practical matter, to deliver his entire lumber output to the principal. These cross-ties, further, were from timber on a tract on which the logging rights were owned by the principal.
In the present instance, Continental was in the business of manufacturing paper from pulpwood, which included the growing of timber for use as pulpwood in its paper plant. To harvest this pulpwood, Continental "sold" certain of its standing timber to its dealers such as Cade. However, Continental immediately "re-purchased" at a higher price the same timber from the same dealers, after such timber was cut into pulpwood of specified lengths and was delivered to Continental's paper plant by the dealers' producers, such as Brewton, the plaintiff's immediate employer.
As in the cited Stevens and Kline cases, the difference between the "buying" and the "selling" price of the timber amounted in *889 reality to remuneration for the cost of harvesting Continental's own timber and delivering it as pulpwood to Continental's paper plant. Also, a true open-market buyer-seller relationship did not exist between Continental and those such as Cade that Continental utilized to cut its own timber, because of the explicit and implicit contractual control exercised by Continental over the pulpwood operations and the pulpwood so produced, including Continental's power to terminate or to cease to renew the short-term agreement if Cade did not deliver to Continental all of the pulpwood produced by him on Continental's land under the contract. Jones v. Hennessey, cited above.
Thus, under the jurisprudence, Continental is not regarded as buying the pulpwood from the dealers on the open market, but instead as paying the dealers (and through them the producers) to cut Continental's own standing timber into pulpwood and to deliver such pulpwood to Continental's paper plant. Therefore, since in essence Continental contracted out this part of its business operations for performance by the dealers and producers, Continental is liable as a principal under LSA-R.S. 23:1061 for workmen's compensation to any of the employees of the dealers or producers disabled while so engaged.
We affirm the judgment of the trial court holding Continental and its insurer liable for workmen's compensation benefits to the plaintiff. (While the plaintiff by answer to the appeal prays for penalties against Continental's insurer, we further affirm the refusal of the trial court to assess such defendant with penalties. We do not find its failure to pay workmen's compensation arbitrary or capricious, since we think there was a bona fide and serious dispute as to Continental's liability.)
3. Plaintiff's Answer to the Appeal.
By answer to the appeal, the plaintiff requests certain relief. We have already disposed of most of plaintiff's requests therein, such as his prayer for an increase in the penalty attorney's fee awarded.
The plaintiff further requests damages for a frivolous appeal under LSA-C.C.P. Art. 2164. However, under the jurisprudence, even though the appeal is without serious merit, such damages are not allowed unless it is manifest that the sole purpose of the appeal is delay or that counsel for the appellant does not sincerely believe in the view of the law he advocates. Lanza Enterprises, Inc. v. Continental Ins. Co., La.App. 3 Cir., 129 So.2d 91. Under the very stringent tests applied by the jurisprudence, we cannot say that such damages should be awarded.
Decree.
For the foregoing reasons, the judgment of the trial court is amended so as to reduce the penalty attorney's fee awarded from Five Thousand Dollars to Three Thousand ($3,000) Dollars, and so as to limit the 12% penalties so as to apply only to compensation payments previously overdue for more than sixty days or which shall hereafter become overdue for more than sixty days. As thus amended, the trial court judgment is affirmed in all other respects. The costs of this appeal are to be paid by the defendants-appellants.
Amended and affirmed.

On Application for Rehearing
En Banc. Rehearings denied.
TATE, J., concurs in the denial of the applications for rehearing filed by the defendants herein. He dissents, however, from the denial of the plaintiff's application for rehearing insofar as it complains of this court's action in reducing the penalty attorney's fees awarded from $5000 to $3000, for the reasons assigned in his dissenting opinion filed herein.
FRUGEé, J., dissents from denial of rehearing for plaintiff.
*890 TATE, Judge (dissenting in part).
The writer respectfully dissents from the denial of the plaintiff's application for rehearing, insofar as the application complains of the reduction by this court of the penalty attorney's fees awarded by the trial court from five thousand to three thousand dollars.[1]
Preliminarily, we shall refer to the landmark decision by our Supreme Court on the question in Cain v. Employers Casualty Co., 236 La. 1085, 110 So.2d 108. In this decision, The Supreme Court, overruling several court of appeal decisions, held that the penalty attorney's fees assessed under LSA-R.S. 22:658 against insurers arbitrarily failing to pay workmen's compensation due, were not governed by the maximum limitation provided for attorney's fees by the workmen's compensation act itself, LSA-R.S. 23:1141. (At the time of the Cain litigation, this statute provided that the maximum attorney's fee allowable out of the claimant's recovery was $1,000; this maximum has since been increased to $1,900, see Act 496 of 1958, amending LSA-R.S. 23:1141.)
The Cain decision pointed out that the compensation statute provision limiting the award of attorney's fees was intended only to benefit injured employees. However, the court noted that the same public policy reasons in protection of the workmen which governed the fixing of a maximum attorney's fee, did not apply to penalty attorney's fees assessed against the employer's insurer under LSA-R.S. 22:658. By the latter statute, the only guide provided is that "the attorneys' fees must be reasonable, that is, commensurate with and based on the reasonable value of the services rendered." 110 So.2d 110.
In the Cain case, then, the Supreme Court approved as reasonable a penalty attorney's fee of $2,000 allowed by the trial court, twice the then-statutory maximum. The Supreme Court further relied upon the judgment of the trial court, which was familiar with the work done by the plaintiff's attorneys, including all of the details, when the high court found such penalty attorney's fee to be reasonable.
In the present instance, the trial court found that a penalty attorney's fee of $5,000 was reasonable under the facts of this case. In my opinion, the majority of this court did not allow sufficient weight to this determination by the trial court.
But, further, I am somewhat at a loss at deciding upon what basis the majority felt that it would never be reasonable in workmen's compensation cases to fix penalty attorney's fee of $5,000, i. e., approximately one-third of the amount of the recovery.
That no other case had yet awarded this amount, does not mean that the penalty attorney's fees in this case are not worth a greater amount. More to the point, I do not think these other decisions can be interpreted as holding as a matter of law that the penalty attorney's fee cannot be determined as was done by the trial court herein; most of these decisions approved the fee fixed by the trial court without discussion of rationale.
The current issue of the Louisiana Bar Journal (November, 1963; Volume 11, Number 3) contains a "Suggested Minimum: Fee Schedule of the Louisiana State Bar Association" adopted April, 1963. This schedule was prepared after study by professional committees; it was adopted by the House of Delegates and the Board of Governors *891 of the Louisiana State Bar Association; this schedule thus represents the considered judgment of minimum reasonable attorney's fees by those most qualified to express an opinion on the matter. 11 La. Bar Journal 221 (1963).
This minimum fee schedule provides that the minimum fee in litigated insurance subrogation and tort cases is 331/3% of the amount of recovery, if the attorney's fee is fixed on a contingent basis. 11 La.Bar Journal 230-231.
Further, even in non-contingent work, the minimum recommended fee is at an hourly rate of $30.00 per hour, 11 La.Bar Journal 234and I estimate that the record before us, including the preparation of pleadings, the preparation for trial and the interviewing of witnesses, the trial of interlocutory motions and exceptions, the taking of depositions away from the law offices, the extended trial on the merits itself, the legal research involved and the time involved in preparing for and writing the briefs on trial and appeal, etc., must represent an expenditure of at least 150 hours of the time of skilled counsel who so successfully represented his client.
Under these circumstances, I am at a loss to determine upon what basis a majority of this court has arbitrarily determined that the trial court abused its discretion in fixing a reasonable attorney's fee in this case at five thousand dollars, and upon what basis a majority of this court has arbitrarily determined that instead the attorney's fee should be fixed at three thousand dollars.
Practicing attorneys with daily familiarity with the matter have found that in cases handled on a contingency basis, the minimum reasonable attorney's fee should be based upon one-third of the gross recovery. I simply cannot see on what basis that my brethren, themselves many years out of active practice, conclude that the trial court abused its discretion herein in fixing the present attorney's fee on this same basis.
I may add that in the present case, little was stipulated and everything was fought, including the accident itself, the circumstances verifiable by lay testimony, the medical phases, even the fixing of the case for trial.
Before concluding, I should state that the great majority of insurers that defend compensation cases will not be assessed with penalty attorney's fees. Counsel states that such penalties have only been awarded in 31 reported cases to date. It is only when an insurer arbitrarily and capriciously and without probable cause refuses to pay workmen's compensation benefits due an injured workman, that penalty attorney's fees are allowed.
In these instances of arbitrary and deliberate actions, I see no reason why the arbitrary insurer should not pay the full reasonable attorney's fee fixed in accordance with the minimum fee schedule recommended by the Louisiana State Bar Association as applicable to cases handled on a contingency basis. By the very fact that penalty attorney's fees are ultimately affirmed, it is found that the insurer was without probable cause in refusing to pay compensationthere should be no reason not to assess such an insurer with the full reasonable value of attorney's fees such as would have been applicable in non-penalty situations, had the insurer hired its own attorney to make a subrogation recovery on a contingency basis.
We must remember that the great majority of insurers honestly and conscientiously try to fulfill their clear obligations and to defend only in instances where there is a bona fide dispute. But for those insurers which arbitrarily refuse to pay their clear liability, which arbitrarily try to take advantage of the poverty and misfortune of a crippled workingman, the legislature has provided that in such instances the insurer shall be assessed with penalty attorney's feesand such penalty attorney's fees must be "based on the reasonable value of the [attorney's] services rendered." 110 So.2d 110. In refusing to affirm the reasonable attorney's fees fixed by the trial *892 court, the majority in my humble opinion has generously exercised charity on behalf of this arbitrary insurer, for no observable legal or humane reason, when the attorney's fees fixed by the trial court under whose eyes the services were performed, is in accord with applicable minimum fee schedules of the Louisiana State Bar Association.
The fact that in other litigation, under other circumstances, we have affirmed the award by the trial courts of attorney's fees in lesser amounts, does not require us to reduce the present reasonable attorney's fees awarded by the present trial court under the circumstances reflected by the present record.
For these reasons, I respectfully dissent.
NOTES
[1] See LSA-R.S. 23:1317: "If an answer [to the petition for workmen's compensation] has been filed * * *, the court shall hear the evidence that may be presented by each party." (Italics ours.)
[2] We note that in Fruge v. Pacific Employers Insurance Co., 226 La. 530, 76 So.2d 719, the claimant's counsel did attempt to raise the issue. The Supreme Court did not, however, pass upon the contention because the plaintiff had not timely raised it by appropriate pleadings.
[3] See e. g.: Malone v. Plaisance Groc., La.App. 3 Cir., 146 So.2d 853 (compensation awarded, 52 wks. at $31.20 and Med. $1,332.70, penalty atty. fees $750.00, approximate percentage, 45%); Harris v. Great Am. Ind., La.App. 3 Cir., 142 So. 2d 594 (compensation awarded $13.80, penalty atty. fee $98.00 approximate percentage, 700%); McGee v. Augenstein Const., La.App. 3 Cir., 137 So.2d 403 (awarded $777.00 medical, penalty atty. fee $300.00, approximate percentage 40%); Shuff v. Liberty Mut., La.App. 3 Cir., 134 So.2d 707 (compensation awarded $276.00, penalty atty. fee $150.00, approximate percentage 50%).
[4] Cain v. Employers Cas. Ins. Co., 236 La. 1085, 110 So.2d 108 ($2000): Milliet v. Employers, La.App. 4 Cir., 148 So.2d 825 ($2000); Tullier v. Ocean Accident, La.App. 4 Cir., 141 So.2d 521 ($3000) reversed on other grounds, 243 La. 921, 148 So.2d 601; Collins v. Southern Pulpwood, La.App. 3 Cir., 138 So.2d 638 ($2000); Barbara v. Lumbermen's Mut., La.App. 4 Cir., 137 So.2d 466 ($2000); Monk v. Forestry Comm., La.App. 3 Cir., 124 So.2d 351 ($2500); Moore v. Pullig, La.App. 2 Cir., 123 So.2d 826 ($2000); Finn v. Delta Drilling, La.App. 1 Cir., 121 So.2d 340 ($2000); Tyler v. Great American, La.App. 2 Cir., 116 So.2d 717 ($2000).
[1] Although the writer was the author of the court's opinion, the reduction in the penalty attorney's fees represented the views of a majority of the court and not those of the writer. There was a division in the views of the court on the matter, but to avoid reargument and further delays in this workmen's compensation proceeding it was decided to render the opinion representing the views of a majority of the entire court and to present the dissenting views, for the benefit of a higher reviewing court, when the question came up on application for rehearing.