GERALD P. FEDOROFF, Judge Pro Tem.
Plaintiff appeals from a judgment dismissing his claim for Workmen’s Compensation benefits based on total and permanent disability.
On December 15, 1964, plaintiff, working as a sheet metal helper at Avondale Shipyards, Inc., caught his right foot in a roller. He was treated first by Dr. James Le Noir, an orthopedist, who found a severe long laceration along the medial side of the foot, extending from the os calcis to the head of the first metatarsal bone; avulsion of the skin of the entire sole of the foot, extending laterally away from the *860 laceration; a deep laceration in the web-space between the great and second toe; extension of the fourth and fifth toes; and multiple fractures of the toes. On the day of the accident, the foot was cleansed, sutured and immobilized in a cast. Reduction of the fractures was not necessary. Further debridement was performed as dead tissue could be identified.
On January 27, 1965, Dr. George Hoffman, a plastic surgeon, performed further debridement, and three days later he covered the damaged sole of the foot with a split thickness graft, taken from plaintiff’s lower abdomen. Plaintiff did well following surgery, and was discharged from the hospital on February 13, 1965. On April 29, 1965, Dr. Le Noir fitted him with a molded plastic inner sole to distribute weight evenly. On June 1, 1965 he attempted to return to light work, but had to stop after 5 hours because of pain in his foot. He again sought medical attention and returned to light work on June 7, 1965.
On June 23, 1965 plaintiff returned to Dr. Hoffman, who found that the graft on the ball of the foot had broken down. When plaintiff avoided weight bearing upon the doctor’s advice, the breakdown healed, and plaintiff returned to work on July 11, 1966. He returned again to Dr. Hoffman on September 21, 1966 with a recurrence of the breakdown. On October 4, 1966, Dr. Hoffman applied a full thickness graft to the sole of plaintiff’s right foot. The doctor reported “all of his grafts took 100%,” and discharged plaintiff on October 22, 1966. Plaintiff then returned to full employment on December 7, 1966.
Plaintiff sought no further medical attention[1] until November, 1968, when he returned to Dr. Hoffman, complaining of a small area of excoriation, which healed in two weeks. Dr. Hoffman then discharged him, advising him to cleanse his foot, change socks and use Lanolin cream at his lunch break.
Both Dr. Le Noir and Dr. Hoffman felt that as of December 7, 1966, the plaintiff could perform all the duties required of his employment, and neither assigned any percentage of permanent disability.
During the period between plaintiff’s return to light duties in June, 1965 and his discharge to full employment in December, 1966, plaintiff worked intermittently, generally performing lighter work than he had done before the accident. ' He was paid workmen’s compensation during those periods he did not work in the total amount of $1,580.00.
After December 7, 1966, plaintiff fully performed his regular duties in the sheet metal shop without substantial difficulty. In early 1967, he was promoted to third-class mechanic. By the time he voluntarily terminated his employment in 1971 (apparently to follow his wife and family, who had moved to Mississippi), he had been promoted twice more and had attained the classification of first-class mechanic. His superintendent and several co-workers testified that plaintiff performed well all the duties required of him. In fact, the record establishes that after his second skin graft had healed, plaintiff played volley ball on his lunch break three or four days a week.
Since his relocation in Mississippi, plaintiff has operated a milk delivery route.
To establish his claimed disability, plaintiff relies entirely on the opinion of Dr. Blaise Salatich, who examined him once, on November 11, 1970. Dr. Salatich viewed the injury as a permanent one which would interfere significantly with occupational endeavors and would possibly require further surgical intervention.
*861 The trial judge assigned “very little weight” to Dr. Salatich’s opinion. In light of the lay testimony and plaintiff’s work record following his eventual return to full employment, and of the contrary opinions of the two treating specialists, we cannot conclude the trial judge committed manifest error in resolving the conflict in medical opinions.
We further agree that plaintiff has failed to prove any permanent partial disability in an ascertainable percentage. In fact, the record affirmatively establishes that plaintiff had recovered from his injury without disability by December 7, 1966.
Finally, as to credit for those periods before December 7, 1966, during which plaintiff was not paid compensation, the trial court held plaintiff was paid unearned wages in lieu of compensation. While undoubtedly plaintiff was performing light duties during such periods, the record does not support the conclusion that the wages were not fully earned. To the contrary, it appears that plaintiff was performing duties regularly performed by Avondale employees working in the same job classification that plaintiff then occupied and earning the same rate of pay.[2]
We conclude that plaintiff’s wages were earned during the period between June 1, 1965 and December 7, 1966, and that Avondale is not entitled to a credit for those wages against compensation due during the period of plaintiff’s temporary disability. Lindsey v. Continental Casualty Co., 242 La. 694, 138 So.2d 543 (1962); Madison v. American Sugar Refining Company, 243 La. 408, 144 So.2d 377 (1962); 2 Larson, The Law of Workmen’s Compensation, § 57.42 (1970).
During the period of temporary disability from December 15, 1964 to December 7, 1966, or 103 weeks, plaintiff was entitled to benefits totalling $3,605.00, and Avon-dale is entitled to a credit of $1,580.79 for compensation paid during this period.
For the foregoing reasons, the judgment of the district court is reversed, and it is now ordered that there be judgment in favor of plaintiff and against defendant in the sum of $2,024.21, with legal interest from the due date of each weekly compensation benefit payment until paid, and all court costs.
Reversed and rendered.

. Plaintiff did consult the plant first aid station on occasions, claimed by him to be as frequent as twice a month. Significantly, Avondale’s records indicated he had gone to the first aid station ten times in 1968 (three times for the foot), five times in 1969 (one time for the foot), twenty times in 1970 (four times for the foot), and sixteen times in 1971 (three times for the foot).

. In an effort to facilitate plaintiff’s rehabilitation, Avondale commendably assigned plaintiff only the lighter of the duties within his work classification. This resulted, however, in other workers within the same classification having to perform more of the heavier duties, rather than in plaintiff being paid unearned wages in lieu of compensation.