316 So.2d 3 (1975)
John O. BOURGEOIS
v.
FIREMAN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY, and Buquet Distributing Co., Inc.
No. 10292.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
*4 Robert E. Peyton, New Orleans, for Buquet Distributing Co., Inc., and Fireman's Ins. Co. of Newark, New Jersey.
Robert B. Butler, III, Houma, for plaintiff-appellee.
Larry P. Boudreaux, Thibodaux, for Allstate Ins. Co. and Rene's Restaurant, Inc.
L. G. Laplante, Jr., Cut Off, for Nolan Terrebonne, Loredia Terrebonne, Rene Terrebonne, Lloyd Ledet and Sybil Ledet and Rene's Lounge, Inc.
Before LOTTINGER, COVINGTON and BAILES, JJ.
LOTTINGER, Judge.
This is a workmen's compensation suit brought by John O. Bourgeois, plaintiff, against his employer, Buquet Distributing Co., Inc. and its insurer, Fireman's Insurance Company of Newark, New Jersey, to recover for a total and permanent disability resulting from a knee injury to his left knee on November 26, 1971. The Trial Court rendered judgment in favor of plaintiff awarding him compensation for total and permanent disability in the sum of $49.00 per week beginning November 26, *5 1971, for the duration of his disability not exceeding 500 weeks, as well as $4,582.87 for medical expenses, subject to a credit of $461.00 for compensation paid and $1,175.80 for medical expenses paid. From this portion of the Judgment, defendants appealed. The Lower Court also ordered defendants to pay interest and court costs.
Plaintiff sustained the injury to his left knee while in the employ of Buquet Distributing Co., Inc. He was delivering a keg of beer to one of his employer's customers. In the process of loading the keg into a beer box, his left foot slipped in some orange juice, and he fell with the keg falling across his left knee.
Plaintiff's injury was diagnosed by Dr. Richard Landry, an orthopedic surgeon, as a torn medial meniscus. Dr. Landry operated on plaintiff in December of 1971, and he was hospitalized in connection with that operation from December 21 through December 30 of 1971. After he was released from the hospital he underwent numerous physical therapy treatments and remained at home for several weeks. He returned to work on or about February 14, 1972 having missed 10 weeks of work. The knee injury never healed properly, and the area continued to hurt and swell. Additionally, it was unstable and caused plaintiff to fall on a number of occasions and to injure himself four times according to evidence presented by plaintiff. Testimony presented showed that the injured knee gave way on plaintiff and caused him to fall in April of 1972 resulting in an injured right elbow; a fall in September of 1972 caused a broken wrist; a fall in November of 1972 caused an injury to several toes; and a fall in April of 1973 resulted in a fracture of plaintiff's right arm. According to testimony, on at least two other occasions, once in a garden, and once at home, plaintiff's knee gave out on him and caused him to fall. In April of 1974, upon the recommendation of Dr. Henry LaRocca, an orthopedic surgeon, plaintiff underwent a second operation on his knee. He was hospitalized on that occasion from April 16, 1974 to May 3, 1974, and was totally disabled through the time of trial in the Lower Court on May 28, 1974. Dr. LaRocca found and removed a large fragment of medial meniscus from the knee.
Defendants set forth three specifications of error on the part of the Trial Court which we will take in the order in which they are presented.
First, defendants, believe that the Trial Court was in error to connect the plaintiffs problems and disability to his accident on November 26, 1971, because defendant believed that plaintiff's proof was contradictory and insufficient to allow him to carry the necessary burden of proof. The main thrust of defendant's argument is that the testimony of Drs. Landry and LaRocca are not in complete harmony. Dr. Landry testified that he had removed the entire meniscus, whereas Dr. LaRocca testified that in his surgery, which followed Dr. Landry's surgery, he removed two-thirds of the meniscus. Dr. Landry was unable to explain the testimony of Dr. LaRocca. He stated that he removed the entire meniscus and postulated that if Dr. LaRocca removed any structure, it was regenerated meniscus. At any rate, both of these doctors attributed plaintiff's continuing problems with his knee, its instability, and the fact that it caused him to fall to the initial accident. It really makes no difference whether this piece of meniscus was left in the knee after the first operation or whether it regenerated. The only other orthopedist whose testimony was taken was Dr. Saer, a physician employed by the defendants who never operated on plaintiff, never treated him, and saw him only once. Dr. Saer was unable to explain the cause of the knee giving out. Dr. Saer's examination was before the second operation and before Dr. LaRocca's positive findings in that operation of internal derangement of the knee. Plaintiff was *6 also examined by Dr. David Aiken, a general surgeon, who thought that his falls were due to an old back injury of some thirteen or fourteen years ago. It is apparent, especially in light of the actual findings of Dr. LaRocca who opened the knee and removed the fragment of meniscus therefrom, that plaintiff's problem was caused by his knee and that Dr. Aiken's opinion was incorrect. It is difficult to see how any more convincing or positive proof could be adduced to show that plaintiff's problems are a result of the initial knee injury.
Alternatively, defendants believe that the Trial Court erred in awarding compensation during the period of time that plaintiff worked at his employment with Buquet Distributing Co., Inc. from February 1972 until April 1974, and received his full salary. It is not disputed that plaintiff received compensation from the date of the accident until he was discharged by his treating physician and returned to work and that he received his full salary from the time he returned to work until his second operation by Dr. LaRocca.
Plaintiff's testimony, and that of his co-workers and family, shows that the knee hurt him on the job, would swell at night, and that plaintiff needed assistance from others to do the same work he was able to do by himself prior to his injury. As previously noted he was injured on four occasions by falls caused by the injured knee. It is well settled that an employee is totally disabled if his injuries make his working dangerous to himself or his fellow employees. We do not see how it can be argued otherwise than that his working was dangerous to himself since he did sustain other injuries as a result of his knee giving out on him. The defendants presented no evidence to show that plaintiff did not earn the wages which were paid to him. If the employer had merely carried him on its payroll for this two year period as a gratuity, the defendants would have produced testimony to that effect. The law is clear that an employer is not entitled to a credit for wages against compensation unless the wages were not earned. It is likewise clear that a plaintiff may be totally disabled and yet earn the wages that are paid to him. In Francis vs. Kaiser Aluminum & Chemical Corporation, 225 So.2d 756 (La.App., 4th Cir. 1969) plaintiff, who was a class A industrial refrigeration mechanic, suffered injuries to the medial meniscus of his knee and underwent surgery. After he returned to work he was unable to climb with safety, and climbing was necessary in 50% to 75% of his work. The Court held that he was permanently and totally disabled. The Court also denied the employer's claim for credit for wages against compensation for the period between plaintiff's return to work and the trial. That Court said it is a matter of definition that the disability which entitles plaintiff to compensation prevents him from doing all of the duties of his prior employment. It further said that the test for treating wages as in lieu of compensation is not whether he does all his prior work (if he did he could not claim disability); rather the test is whether the wages are earned by such work as the claimant does. Two other cases which hold the same are Matherne v. Avondale Shipyards, Inc., 299 So.2d 859 (La.App., 4th Cir. 1974), writ refused, and LeBlanc v. Mangel's of Louisiana, Inc., 306 So.2d.422 (La.App., 3rd Cir. 1975). In the instant case the employer received substantial value for the wages he paid. Plaintiff worked full hours and performed a variety of tasks. There is no testimony from the employer or any of his representatives that the work which plaintiff did could have been purchased at a lower rate or that plaintiff did not earn his salary.
Thirdly, defendants believe that the Trial Court erred in failing to limit plaintiff's award to a specific period of time from the date of his second operation in *7 April of 1974. The thrust of this argument is that a meniscectomy is a common type of operation that almost always results in full recovery within a matter of a few months. Defendants argue that the medical experts have testified that two months of convalescence would be within an average range of time. Based on this, defendants argue that the Trial Judge should have determined the period of disability and made his award accordingly.
Defendants admit that plaintiff was disabled at the time of trial. It is well settled that where the plaintiff is disabled at the time of trial, he should be awarded compensation for total and permanent disability during the period of disability not to exceed the maximum period allowed by law. The evidence in the record does not establish when, if ever, plaintiff will be able to return to work. At the time of trial, Dr. LaRocca said he could not make a definite statement as to the extent of the permanent disability plaintiff would have. Evidence about the duration of disability usually associated with the meniscectomy is of no value in this case, because this apparently is not a usual meniscectomy. Plaintiff had severe and extensive problems lingering on long after the initial operation, which is by no means the normal result. Either a large piece of meniscus was left in his knee or the meniscus regenerated. At any rate it caused him substantial problems, had not healed as of the trial date, and the Trial Judge could not have, with any certainty, fixed a period of disability. The defendants are fully protected by their right, if they think plaintiff is no longer disabled, to go into court to have the award terminated.
For the above and foregoing reasons, the judgment of the Lower Court is affirmed, all costs of this appeal are to be paid by defendants-appellants, Fireman's Insurance Company of Newark, New Jersey and Buquet Distributing Co., Inc.
Judgment affirmed.