335 So.2d 457 (1976)
Landry E. BASCO
v.
The STATE of Louisiana, Through the DEPARTMENT OF CORRECTIONS, and Houston General Insurance Co.
No. 10714.
Court of Appeal of Louisiana, First Circuit.
May 24, 1976.
Rehearing Denied July 28, 1976.
*459 Jack C. Fruge, and Chris Fruge, Ville Platte, for appellant.
John W. Wilson and James F. Abadie, Baton Rouge, for appellees.
Before LANDRY, COVINGTON and PONDER, JJ.
LANDRY, Judge.
Defendants, State of Louisiana, Through the Department of Corrections (Department), and its workmen's compensation insurer, Houston General Insurance Co. (Insurer), appeal from judgment awarding plaintiff Landry E. Basco (Appellee) maximum benefits for total permanent disability, together with statutory penalties and attorney's fees. We affirm in part and reverse in part.
Plaintiff, now retired, was a former Civil Service employee. The primary legal issues on appeal are: (1) Whether Civil Service Rule 11.21, which restricts the taking of sick leave by Civil Service employees, violates La.R.S. 23:1163 by requiring a civil service employee to pay his own workmen's compensation benefits; and (2) Whether statutory penalties provided by La.R.S. 23:1163 are assessable against total compensation awarded or assessable only against compensation payments more than sixty days past due.
Plaintiff was employed as a Farm Supervisor II in the Agri-Business Division (Division) of the Department on the state prison farm at Angola, Louisiana. As such, plaintiff's duties consisted mainly of supervising inmate labor on a portion of the prison's vast sugar cane farm. It was plaintiff's duty to instruct prisoners in the operation of tractors, mixing and application of insecticides, herbicides and fertilizer, the maintenance of equipment and machinery, and all other phases of work required in planting, cultivating and harvesting sugar cane on approximately 1,400 acres of prison land. Additionally, plaintiff did some welding and performed heavy manual labor when prison labor was short or inmates were unable to perform specific tasks. Plaintiff was also required to travel extensively by truck over rough farm roads in the performance of his supervisory duties. On January 2, 1974, plaintiff sustained severe neck and shoulder injuries while unloading a tractor during the course and within the scope of his employment. The injuries initially disabled plaintiff from January 4 through February 17, 1974, a period of 6 and 3/7ths weeks. On February 18, 1974, plaintiff resumed employment but could not satisfactorily perform his duties and therefore worked intermittently until July 11, 1974, missing a total of 14 and 3/7ths weeks during this period. Because of his inability to function as a Farm Supervisor, plaintiff was transferred to the position of Correctional Officer II (Prison Guard) on July 12, 1974. As a Prison Guard, plaintiff was paid the same salary that he had received as Farm Supervisor. Plaintiff remained employed as a Prison Guard until November 28, 1974, when he went on sick leave, in which status he continued until his disability retirement on April 9, 1975.
The accident was reported to the Division, which in return informed the Department, who reported the incident to insurer shortly following the occurrence of the event. On May 2, 1974, Appellee was paid compensation in the sum of $417.87, representing *460 compensation at the rate of $65.00 weekly for the 6 and 3/7ths weeks work lost between January 4 and February 17, 1974. No further compensation was paid Appellee until November 8, 1974, when Appellee received a check for $928.58 for compensation due from February 18 to July 11, 1974.
When injured on January 2, 1974, Appellee had accumulated 1301.7 hours of sick leave and 1506.7 hours of annual leave. After his injury, Appellee took sick leave for each day of absence and received full pay daily until his retirement on April 9, 1975. The $417.87 check received by Appellee on May 2, 1974, was endorsed by Appellee to the Department, for which transfer Appellee received credit for an additional 110 hours of sick leave. The number of hours sick leave thus credited to Appellee was determined by dividing Appellee's hourly rate of pay into the sum of $417.87 transferred to the Department. Admittedly, this procedure was followed pursuant to fixed Department policy in compliance with Civil Service Rule 11.21 which states:
"When an employee is absent from work due to disabilities for which he is entitled to workmen's compensation, he may, at his option use sick leave and annual leave not to exceed the amount necessary to receive total payments for leave and workmen's compensation equal to his regular salary."
The record establishes that prior to Appellee's endorsement of the $417.87 check to the Department, Appellee was fully advised of the application of Rule 11.21 above, and that Appellee consented to said transfer of funds. However, despite Appellee having been paid his full salary because of his having taken sick leave, Appellee declined to endorse the November 8, 1947 compensation check for $928.58 to the Department.
Appellee claims compensation benefits of $65.00 weekly for 500 weeks commencing July 12, 1974, subject to credit for payments made, together with interest, penalties of 12% on all unpaid benefits, and attorney's fees in the sum of $4,000.00.
The trial court awarded Appellee compensation at the rate of $65.00 weekly for 500 weeks commencing July 12, 1974, subject to credit for payments made, with interest, penalties of 12% on all unpaid benefits, and attorney's fees in the sum of $2,500.00. The trial court also held Civil Service Rule 11.21 invalid in violation of La.R.S. 23:1163 and rendered judgment in favor of Appellee against the Department in the sum of $417.87. The contention of Department and insurer that Appellee's wages as Prison Guard were not earned and were therefore wages in lieu of compensation for which credit should have been given in off-set of compensation found to be due, was rejected by the trial court.
The Department and insurer have appealed contending the trial court erred in: (1) Holding Civil Service Rule 11.21 invalid; (2) Rendering judgment in favor of Appellee against the Department in the sum of $417.87; (3) Rejecting the contention that Appellee's wages as Prison Guard were unearned and in lieu of compensation; (4) Awarding Appellee penalties and attorney's fees; and, alternatively, (5) Awarding Appellee penalties on all compensation due rather than restricting penalties to compensation past due more than sixty days.
Appellee has answered the appeal seeking an increase in attorney's fees. Appellee has also requested additional judgment against The Department and insurer in the sum of $74.10 for taking the deposition of Appellee's medical expert Dr. Davidson Texada. The additional item of deposition costs sought by Appellee is not seriously questioned by Appellants.

VALIDITY OF CIVIL SERVICE RULE 11.21
The record establishes that the Department and the State Civil Service Commission have interpreted Rule 11.21 to mean that a civil service employee receiving *461 compensation benefits for a work-related injury may not receive compensation payments and sick leave payments in an aggregate amount exceeding the employee's regular wages. It is the Department's policy to explain the rule to each employee affected thereby and permit the employee to elect the hereinafter explained option. It is also shown that the rule is applied uniformly and without exception.
The record discloses that in each case of this nature, the injured employee is informed that he may either receive compensation benefits and claim sufficient hours of sick leave weekly as will afford him income equal to his regular salary, or he may receive compensation benefits and take full sick leave each week. In this latter case, he must return compensation benefits to the Department when finally received, in return for the Department's recrediting certain portions of his sick leave. The final result in both cases is the same.
The Department considers the rule a limitation on the amount of sick leave an injured employee is entitled to take during a period in which the employee is receiving workmen's compensation benefits for a work related injury. As applied by the Department, the rule affects only the amount of sick leave which an employee may claim in a case of this nature. Its application does not in any manner affect the amount of compensation to which the employee is entitled. In this case Appellee was making a salary of $170.40 weekly for a 45 hour work week, when Appellee was injured. He was therefore then earning an hourly salary of $3.79. For the initial 6 and 3/7th weeks of work missed, Appellee was paid compensation of $65.00 weekly or $417.87, which would have constituted Appellee's sole income but for sick leave benefits provided by Civil Service Rules. Appellee was allowed to utilize approximately 28 hours sick leave weekly during his absence from work due to his injuries. The sick leave plus compensation benefits equalled Appellee's regular salary. The record also shows that where an injured employee receiving compensation elects to claim total weekly sick leave and thus receives full salary plus compensation benefits, in every instance, the employee is required to refund the compensation amount to the Department and receive in lieu thereof hourly sick leave credit determined by dividing the employee's hourly rate of pay into the amount of compensation refunded, which is precisely what was done in this instance.
The trial court held Civil Service Rule 11.21 invalid upon finding that the rule, as applied, violates La.R.S. 23:1163, which prohibits an employer from obtaining reimbursement from an employee of any of the employer's cost of providing compensation insurance. The trial court so found on the ground that the rule violates the statute by requiring an employee to indirectly pay his own compensation.
The rules of the State Civil Service Commission have the force and effect of law. La.Const.1921, Article XIV, Sec. 15(1); La.Const.1974, Article X, Sec. 10 (A)(4).
We disagree with the conclusion that Rule 11.21 violates La.R.S. 23:1163 by requiring an employee to indirectly pay his own compensation. A state employee has no statutory right to sick leave benefits. These benefits are established by Civil Service Rules 11.5 through 11.21.1 which provide how sick leave may be accumulated and when and how it may be used by a classified employee. Such rights as classified employees have to sick leave arise solely from the cited rules. The rule in question merely limits the amount of sick leave which may be claimed by an employee receiving compensation for a workrelated injury. The rule affects only the amount of sick leave an employee may claim in such circumstances; it in no way infringes upon the employee's right to compensation or the amount thereof.
*462 In practical application of Rule 11.21, Appellee received a check from the Division every two weeks in the sum of $340.81 during the periods Appellee was on sick leave, said amount being the amount of his regular salary. However, in this instance, as is apparently true in most similar instances, compensation benefits did not reach Appellee until some weeks following the injury. To provide the employee with instant funds, the Department paid Appellee full wages in the form of sick benefits, which practice insures the employee's continued receipt of income.
As thus administered the rule accomplishes a declared policy of the Civil Service Commission, the wisdom of which is not subject to judicial review so long as the policy violates no law and is administered uniformly and in such manner as to reasonably achieve the desired result.
Appellee contends that application of Rule 11.21 as advocated by the Appellants, contravenes established jurisprudence to the effect that sick leave benefits paid an injured employee may not be credited against compensation due him. In so arguing, Appellee cites and relies upon Kaupp v. City of New Orleans, La.App., 248 So. 2d 99; Guerrera v. City of New Orleans, La.App., 212 So.2d 223; Hammond v. Sewage and Water Board of New Orleans, La.App., 204 So.2d 699; Chase v. Warren Petroleum Corp., La.App., 168 So.2d 861; Murphy v. Baton Rouge Coca Cola Bottling Co., La.App., 165 So.2d 636, and France v. City of New Orleans, La.App., 92 So.2d 473.
Our review of each of the cited authorities discloses that they are inapposite because they are factually distinguishable. While the quoted cases espouse the rule that sick benefits are earned and therefore may not be credited against compensation payments due, the employer in this instance is not seeking to claim credit against compensation due because of sick benefits paid. In this case the employer recognizes and enforces the employee's right to sick benefits, but limits the amount of sick leave benefits the employer will pay under certain circumstances. We believe that in the absence of lawful agreement to the contrary, an employer may limit and restrict the time, manner and amount of sick leave payments which the employer provides.

APPELLEE'S RECOVERY OF $417.87 FROM THE DEPARTMENT
Having found Rule 11.21 valid, we must reverse the judgment condemning the Department to refund Appellee the sum of $417.87 which Appellee received as workmen's compensation benefits.
As already noted, upon Appellee's refund of this amount, Appellee was credited with an additional 110 hours of sick leave. This allowed Appellee to delay his retirement approximately three weeks during which time Appellee received sick leave benefits equal to his regular salary. Appellee's last day of work was November 28, 1974. From November 29, 1974 to retirement on April 9, 1975, Appellee was on continuous sick leave receiving his regular pay. Without the 110 hours of sick leave credited as a result of Appellee's refund to the Department of the $417.87, Appellee's sick leave would have expired approximately one and one-half weeks prior to his retirement, or about mid-afternoon, March 31, 1975. The 110 hours of sick leave acquired by Appellee's refund of the sum of $417.87 entitled Appellee to obtain an additional $281.38 in sick leave benefits before retiring and also to retire with approximately 48 hours unused sick leave, which could be added to Appellee's length of service in computing his membership service in the retirement system.
Since Appellee elected to use full sick leave benefits, the Department had the right, under Rule 11.21, to recover from Appellee the amount of compensation received. It is obvious that for this transfer of funds, Appellee received ample consideration. *463 It follows that the trial court erred in ordering the Department to return said amount to Appellee:

WAGES IN LIEU OF COMPENSATION
Both the Department and insurer contend the trial court erred in refusing to allow insurer credit against compensation due, for allegedly unearned wages paid Appellee between July 12, 1974 and April 9, 1975, while Appellee was employed by the Department as a Prison Guard.
The record discloses that Appellee voluntarily requested transfer from the position of Farm Supervisor to Guard when, after attempts to work as Farm Supervisor, Appellee determined that he was physically unable to serve as Farm Supervisor. It is shown that Appellee's chief complaints were inability to lift heavy objects and pain due to the jolting received while riding a truck over the prison farm. Appellee's request for transfer was also based on the written opinion given the Department by Appellee's physician which report indicated Appellee was totally and permanently disabled to do the work of Farm Supervisor. As a Prison Guard, Appellee received the same salary as a Farm Supervisor. From July 12, 1974 through November 28, 1974, Appellee was employed by the Department as a Prison Guard, where his duties consisted primarily of desk work but also included supervision of maximum security prisoners during feeding times and recreational periods. Appellee's superior testified that he received no complaints regarding the manner in which Appellee discharged his duties as Prison Guard. Appellee testified that he had no difficulty performing the work of Prison Guard but voluntarily left that position only because he feared that he could not defend himself against a possible inmate attack, due to Appellee's weakened condition resulting from his injuries.
It is well settled that an employer and his insurer are not entitled to credit, for wages paid, against compensation due unless the wages are unearned and may therefore said to be in lieu of compensation. If wages are earned in a different class of employment, the employee is entitled to both wages and compensation. Whether or not wages are earned is a factual determination to be made in the light of the circumstances of each individual case. Madison v. American Sugar Refining Company, 243 La. 408, 144 So.2d 377; Lindsey v. Continental Casualty Company, 242 La. 694, 138 So.2d 543; Bourgeois v. Fireman's Insurance Company of Newark, New Jersey, La.App., 316 So.2d 3; Lockhart v. Pargas, Inc., La.App., 271 So. 2d 664; Martin v. Travelers Insurance Company, La.App., 200 So.2d 141.
The record establishes that Appellee fully earned the wages paid him as Prison Guard during the interval July 12, 1974 to November 28, 1974. The Department and insurer are therefore not entitled to credit against compensation due for this period because of wages paid Appellee in lieu of compensation. During the period November 29, 1974 to April 9, 1975, while Appellee was on sick leave before retiring, Appellee received no compensation. He is entitled to compensation for this period because the sick leave paid him may not be credited against compensation due. Kaupp v. City of New Orleans, above.

PENALTIES AND ATTORNEY'S FEES
La.R.S. 22:658 provides that failure of an insurer to make payment within sixty days of receipt of proof of loss from an insured, subjects the insurer to a penalty of 12% of the amount of the loss, as damages, together with reasonable attorney's fees, where such failure is arbitrary, capricious or without probable cause. The provisions of the statute apply to numerous classes of insurance, including a claim for workmen's compensation benefits. Whether failure to make compensation payments *464 is arbitrary, capricious or without probable cause within the meaning of the statute in question, depends primarily upon circumstances existing and known to the insurer at the time compensation payments are refused or discontinued. Lee v. Smith, 248 La. 16, 176 So.2d 413; King v. Insurance Company of North America, La.App., 288 So.2d 878.
Appellee's injury was reported to the Department and Insurer in January of 1974, shortly after the accident, at which time Jules K. Lefeaux, Chief Accountant for the Division, began processing Appellee's claim. Medical expenses incurred by Appellee were paid by Insurer as processed and forwarded to Insurer by Mr. Lefeaux. There was never a question concerning Appellee's injury within the scope and during the course of his employment; neither was Appellee's right to compensation ever challenged. On May 2, 1974, Appellee was paid $417.87 as compensation due for the 6 and 3/7ths weeks work lost between January 4, and February 17, 1974. On July 15, 1974, Appellee made formal demand on the Division for additional compensation for total permanent disability and specifically demanded payment of past due benefits for the 14 and 3/7ths weeks Appellee was unable to work subsequent to February 17, 1974. On July 25, 1974, Mr. Lefeaux sent Insurer a supplemental report of injury stating that Appellee had returned to work but was unable to perform the duties of Farm Supervisor and had returned to sick leave. The report also stated that Appellee had attempted to return to work February 18, 1974, but was returned to sick leave on April 26, 1974. Mr. Lefeaux also advised that Appellee attempted to work on April 22, 1974, but resumed sick leave on April 26, 1974. Insurer was further advised that Appellee worked from May 20, to May 28, 1974 and again went on sick leave. Finally, Mr. Lefeaux noted that Appellee had transferred to the position of Prison Guard on July 12, 1974, which position was less physically demanding than that of Farm Supervisor.
When Appellee made demand in July, 1974, both the Department and Insurer were in possession of a general medical practitioner's report which indicated that Appellee was unable to perform the duties of Farm Supervisor, and that Appellee was totally and permanently disabled to do such work. At the same time, the Department and Insurer were also in possession of reports from a neuro-surgeon stating that Appellee could perform light duty only for about three weeks, following which Appellee might resume normal duties provided Appellee's symptoms did not recur.
Notwithstanding the above, Insurer paid Appellee no further compensation until November 8, 1974, when Appellee was issued a check for $928.58 in payment of compensation due from February 18, 1974 to July 11, 1974. This payment was made only after Mr. Lefeaux made inquiry of Insurer on October 18, 1974, following Appellee's complaint of failure to receive compensation payments.
In essence, Insurer justifies its failure to timely pay compensation due for the periods January 4, 1974 to February 17, 1974, and February 18, 1974, to July 11, 1974, on lack of notice of Appellee's claim. Insurer also claims Appellee is not entitled to compensation for the period July 12, 1974 to November 28, 1974, during which Appellee was employed as a Prison Guard, because Appellee's employment in said position constituted wages in lieu of compensation which relieved Insurer and the Department of the obligation of paying compensation. Insurer resumed payments on April 10, 1975, following Appellee's retirement. Insurer further claims it discontinued payments upon the Department's representation to Insurer that no benefits were due Appellee under the Department's interpretation of the applicable civil service rule. It is conceded that compensation payments were current as of June 17, 1975, the date of trial.
We find the record amply justifies the conclusion that Insurer's failure to *465 timely pay benefits due was without probable cause. Notice of the claim was given Insurer shortly following the accident. This notice was supplemented by the transmittal of medical reports to Insurer, pursuant to which Insurer paid certain medical and hospital expenses. Insurer was aware that Appellee's employment as Prison Guard was totally different from that of Appellee's former position of Farm Supervisor and that Appellee was totally and permanently disabled to perform the work of Farm Supervisor. The record does not support Insurer's claim that the Department advised Insurer to discontinue compensation payments because none were due under the Department's interpretation of Civil Service Rules. Insurer is charged with knowledge of the law that retirement benefits paid an employee may not be charged against compensation due. In view of the circumstances, the assessment of penalties and attorney's fees by the trial court was eminently proper. See Horn v. Vancouver Plywood Company, La.App., 322 So.2d 816; Morgan v. Lumbermen's Mutual Casualty Company, La.App., 317 So.2d 7; DeJean v. B. F. Trappey's Sons, Inc., La.App., 285 So.2d 297; Landry v. Bituminous Casualty Company, La.App., 244 So. 2d 105.
We find, however, that the trial court erred in assessing penalties against all compensation due rather than only on compensation due more than sixty days.
La.R.S. 22:658 subjects the insurer to penalty for failure to pay within sixty days of date of demand, of 12% damages, "on the total amount of the loss." The language of the statute is unclear and has thus given rise to some disagreement among the authorities on the question of whether penalties may be assessed against all compensation awarded or merely against payments more than sixty days past due. The overwhelming weight of the jurisprudence holds that such penalties are due only on weekly compensation payments, past or future, which were paid or which might be paid more than sixty days after their due date. Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695; King v. Insurance Company of North America, above; Ray v. Superior Iron Works and Supply Company, Inc., La.App., 284 So.2d 140; Thibodeaux v. Associated Distributing Company, La.App., 260 So.2d 46; Jackson v. Phoenix Insurance Company, La.App., 252 So.2d 511; Roberie v. Ashy Construction Company, La.App., 215 So.2d 857; Redding v. Cade, La.App., 158 So.2d 880; Guillory v. Coal Operators Casualty Company, La.App., 95 So.2d 201.
Delahoussaye v. Allen Action Agency, La.App., 300 So.2d 575, cited and relied upon by Appellee, which holds that penalties are assessable against the total award in a compensation case and not merely on payments arbitrarily withheld more than sixty days, represents a departure from the jurisprudence extablished by the Supreme Court in Seal v. Lionel F. Favret Company, 238 La. 60, 113 So.2d 468; Humphreys v. Marquette Casualty Co., 235 La. 355, 103 So.2d 895; and Wright v. National Surety Corp., above. For a detailed discussion of the problem, see Redding v. Cade, above. We conclude the trial court erred in awarding penalties on the total compensation awarded Appellee and reverse the judgment in this respect.
Appellee is entitled to the requested increase in the award of attorney's fees. The initial award of $2,500.00 by the trial court appears fair and reasonable. We grant an increase of $500.00, in line with the jurisprudence which recognizes that such an award may be increased to reflect the value of legal services rendered on appeal. Chavis v. Maryland Casualty Company, La.App., 307 So.2d 663; Payne v. Travelers Insurance Company, La.App., 299 So.2d 913; Thibodeaux v. Associated Distributing Company, above.
Appellee is also entitled to the sum of $74.10 incurred in taking the deposition of Dr. Davidson Texada. La.R.S. *466 13:4533 expressly provides that the cost of depositions used on the trial of a case shall be taxed as costs.
IT IS ORDERED, ADJUDGED AND DECREED: (1) That the judgment of the trial court declaring Louisiana Civil Service Commission Rule 11.21 invalid be and the same is hereby reversed and set aside and said rule declared legal and enforceable; (2) That the judgment of the trial court ordering the Department to refund plaintiff, Landry E. Basco, the sum of $417.87 representing workmen's compensation benefits endorsed by said plaintiff to the Department, be and the same is hereby annulled, reversed and set aside; (3) That the judgment of the trial court be and the same is hereby amended to award plaintiff, Landry E. Basco, penalties of 12% on all compensation payments, past and future, which have been paid or which may hereafter be paid more than sixty days after due date; (4) That the judgment of the trial court awarding plaintiff, Landry E. Basco, attorney's fees in the sum of $2,500.00 be and the same is increased to $3,000.00; (5) That the judgment of the trial court be further amended to award plaintiff, Landry E. Basco, judgment in the additional amount of $74.10 for taking the deposition of Dr. Davidson Texada.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that except as herein reversed and amended, the judgment of the trial court is affirmed, all costs of this appeal for which the Division and Department may be legally cast, to be paid by said agencies.
Affirmed in part, reversed in part, amended in part and rendered.
PER CURIAM.
In application for rehearing Appellee Landry E. Basco points out that in the assessment of costs herein we cast the State of Louisiana, through the Department of Corrections, and its Agri-Business Division, in solido for all costs for which state departments are amenable, but failed to assess remaining costs and also that we failed to assess any costs whatsoever against Insurer, Houston General Insurance Co.
The author of the original opinion accepts full responsibility for this oversight.
Counsel for all parties agree the error may be rectified without the necessity of granting a rehearing.
Accordingly our initial decree is amended by deleting therefrom that portion which assesses the State of Louisiana through the Department of Corrections and its Agri-Business Division for costs. Our initial decree is also amended to assess Insurer, Houston General Insurance Co., for all costs of these proceedings.
The other grounds urged by Applicant for rehearing were considered and disposed of in our original decree.
Rehearing denied.